**Electronically Filed
Supreme Court
SCWC-13-0005595
22-DEC-2015
10:02 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---oOo---

_____

STATE OF HAWAI'I, Respondent/Plaintiff-Appellee,

vs.

JONATHAN HENLEY, Petitioner/Defendant-Appellant.
_____

SCWC-13-0005595

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-13-0005595; CR. NO. 13-1-0635)

DECEMBER 22, 2015

McKENNA, POLLACK, AND WILSON, JJ., WITH RECKTENWALD, C.J.,
CONCURRING AND DISSENTING, WITH WHOM NAKAYAMA, J., JOINS

OPINION BY McKENNA, J.

I.  **Introduction**

Petitioner/Defendant-Appellant Jonathan Henley ("Henley") appeals from the ICA's judgment, which affirmed the Circuit Court of the First Circuit's[1] ("circuit court") Judgment of Conviction and Sentence, which adjudged Henley guilty of Assault in the Third Degree, sentenced him to 30 days' imprisonment, and

_____

[1]    The Honorable Patrick W. Border presided.

increased bail from $200.00 to $2,000.00 cash only pending execution of sentence. On certiorari, Henley asserts (1) that insufficient evidence supported his conviction; (2) that the circuit court abused its discretion in increasing his bail pending appeal; and (3) that the circuit court abused its discretion in sentencing him to jail for a first offense. Upon reviewing the record, we conclude (1) that the circuit court plainly erred in failing to instruct the jury on mutual affray; and (2) that the district court abused its discretion in increasing Henley's bail from $200.00 to $2,000.00 cash only pending appeal. We do not reach the issue of whether the circuit court abused its discretion in sentencing Henley to jail for a first offense. Because there was sufficient evidence for the conviction, this matter is remanded to the circuit court for further proceedings consistent with this opinion.

## II. Background

### A. Proceedings in Circuit Court

#### 1. Complaint and Jury Demand

Henley was charged by Complaint with "intentionally, knowingly, or recklessly caus[ing] bodily injury to Gary K. Massey, thereby committing the offense of Assault in the Third Degree, in violation of Section 707-712(1)(a) of the Hawaii

Revised Statutes."[2]  He was represented by court-appointed counsel.  Henley demanded a jury trial and was bound over to the circuit court.

### 2.  Jury Trial

A two-day jury trial took place.  The State called two witnesses:  the complaining witness, Gary Massey ("Massey"), and a police officer who responded to the scene of the alleged assault.  Henley called one witness, his friend Kalanikapu Copp ("Copp"), who was with him at the time of the alleged assault.  Henley also testified in his own defense.

### a.  Testimony of Gary Massey

The complaining witness, Massey, testified that he was 68 years old and worked as a security officer for the Colony Surf Hotel on the evening of November 9, 2012.  He arrived at 10:30 p.m. to relieve another security officer, who told him that there was a party in Room 205 that generated two noise complaints and reports of graffiti in the stairwell.  The other security officer had called the Honolulu Police Department. When police officers arrived, they and Massey went to Room 205 and dispersed the party guests.  The police officers left, and Massey went to the 19th floor and walked down the stairwell, as part of his normal duties.  Around 12:30 a.m., he heard more

---

[2]     Hawai'i Revised Statutes ("HRS") § 707-712(1)(a) (2014) provides, as it did at the time of the alleged offense, "A person commits the offense of assault in the third degree if the person . . . [i]ntentionally, knowingly, or recklessly causes bodily injury to another person[.]"

party noise coming from Room 205 and called the police again. Together, they cleared the room once more.

Massey testified that an officer told him to escort two individuals off the property. Those individuals were Henley, who had a guitar strapped onto his back, and Copp, Henley's friend. As the two were descending the stairs, they called Massey a "fucking faggot haole" and told him to "go back to [his] gay country." According to Massey, as Copp exited the stairwell, Massey held the door open, and Henley head-butted Massey above the right eye, causing Massey to feel pain. Massey fell backwards and hit the ground, while Henley threw punches at him. When Massey was on the ground, Henley stood over him with a foot on either side of him; Massey then reached up and grabbed Henley's left testicle and squeezed it. Henley screamed and jumped off of Massey. At some point during this encounter, Massey was kicked or punched in the left ear.

Henley and Copp then ran into Kapiolani Park, and Massey alerted the police officers, who were still upstairs on the second floor, that he had been assaulted. The police officers drove through Kapiolani Park and located Henley and Copp. Massey then positively identified Henley as his assailant. On cross-examination, Massey admitted that Henley and Copp were voluntarily leaving the premises when Massey was following them, and that Massey could have remained behind them at a distance.

4

### b.  Testimony of Officer Nicholas Muna

The State also called Honolulu Police Department patrol officer, Nicholas Muna, who testified that he was called to Room 205 twice on the night of November 9, 2012 to disperse a loud party.  After the second call, as he was talking to the renter of Room 205, he heard a yell for help coming from downstairs.  He ran downstairs to find the security officer flagging him down and pointing towards Kapiolani Park, saying, "[T]hose two guys, they just attacked me."  Officer Muna got into his patrol car and drove through the park.  When two males ran out from behind a tree, Muna detained them.

Later, Muna spoke with Massey, who related that he escorted the two males off the property when they started arguing with him.  The argument escalated, and Massey was punched and head-butted.  Muna testified that Massey told him that after Massey fell onto his back, he was punched again in the left ear.  Massey reported pain to his face, and Muna observed a small cut above Massey's left ear.  On cross-examination, Muna testified that he would never direct Massey to escort people off the property because he would not want to be responsible if Massey were injured.

### c.  Testimony of Kalanikapu Copp

Henley called Copp, his classmate and friend of two or three years, to testify in his defense.  Copp testified that, on

the night in question, he and Henley were at the Colony Surf Hotel for a friend's birthday party.  They were taking turns playing Henley's guitar at the party.  The first time the party was dispersed, Massey and four or five police officers showed up.  Copp stayed behind to use the bathroom, and Henley left the party.  Copp testified that the police officers gave him permission to stay, and Copp called Henley to return to Room 205.  Henley returned, accompanied by a few other people.  They were playing music on the speakers when Massey and the police officers returned and told Henley and Copp to leave.

Copp and Henley exited Room 205 and passed Massey, who had a "real smug look on his face."  Henley told Massey, "I bet you feel real big right now just bossing us around," and Copp told Massey "F you."  Copp's comment "kind of set [Massey] off," so Massey followed them as they were descending the stairwell and called them "hippies" and "faggots."  Copp went through the doorway at the bottom of the stairs first.  He turned back and saw Massey grab Henley "on the arm and . . . kind of jerk him forward."  Henley then turned around and pushed Massey in the solar plexus.  Massey fell.  When he got up, he told Henley, "[Y]ou're going to get it now," and tried to tackle Henley.  Massey tried to put Henley in an "arm bar or a choke."  At this point, Copp punched Massey once, but Massey did not let Henley go, so Copp jabbed Massey three more times.  Copp also saw

Massey grab Henley's testicles.  Massey let go of Henley but was still clinging onto Henley's shirt as Henley attempted to leave.  Copp "karate chopped" Massey's hand, causing Massey to finally let go of Henley.

Copp and Henley then ran into Kapiolani Park.  Massey continued to pursue them, so Copp gave Massey "a little push kick just right to his midsection[.]"  Copp and Henley hid from Massey in a banyan tree and were ultimately discovered by the police.  Copp testified that he did not see Henley head-butt Massey, although he did see Henley push Massey in the solar plexus.  Copp testified that he was the one who punched Massey, probably causing the scratch to Massey's left ear.

### d.  Testimony of Jonathan Henley

Henley took the stand.  He testified that he worked in telecommunications.  According to Henley, he had just turned 19 on November 8, 2012, and he was at the Colony Surf Hotel to celebrate multiple birthdays, including his own.  He had brought along his guitar that he constantly carries around with him.  Henley stated that there was no alcohol at the get-together.  He and Copp were planning on sleeping over.  After arriving at the party, they "jammed" for at least two hours.  The police and a security officer ended the party, and Henley left by himself.  He saw the security officer arguing with a large group of people.  Copp then called Henley and told him they had

permission to return to Room 205 and stay the night.  Henley returned with five others, and they played music on the stereo system before the police and security officer returned.  The security officer accused Copp and Henley of "br[inging] the party back, . . . start[ing] up the music, . . . [and] hanging off the [lanai.]"  Copp and Henley were directed to leave.

Copp and Massey started arguing, and Massey followed Copp and Henley out of the room and to the stairwell.  Massey called Copp and Henley "faggots," "hippies," "punks," and "ignorant children," and Copp told Massey to "fuck off."  Copp exited the door at the bottom of the stairs, and Henley was about to exit when Massey "grabbed [Henley] from the back but like on the upper arm."  Henley "just react[ed]" and "shoved [Massey] away[.]"  Massey let go but then tried to tackle Henley.  Massey did not succeed, so he then "bailed towards the ground and grabbed [Henley's] balls."  Copp saw what was happening, so he hit Massey a few times until Massey released Henley.

Copp and Henley were leaving the property when they heard Massey yelling for help.  They ran towards a tree in order to talk and regroup.  There they were apprehended by the police.  Henley emphasized in his testimony that he did not head-butt or hit Massey, but that he did push Massey in the chest.  After Henley's testimony, the defense rested.

8

### 3.  Jury Instructions

The State requested a jury instruction based on the Hawai'i Standard Jury Instructions Criminal ("HAWJIC") 9.21 jury instruction on Assault in the Third Degree.  The requested instruction stated the following:

> In the Complaint, the Defendant, Jonathan Henley, is charged with the offense of Assault in the Third Degree.
> A person commits the offense of Assault in the Third Degree if he intentionally, knowingly, or recklessly causes bodily injury to another person.
> There are two material elements of the offense of Assault in the Third Degree, each of which the prosecution must prove beyond a reasonable doubt.
> These two elements are:
> 1.  That, on or about November 10, 2012 in the City and County of Honolulu, State of Hawaii, the Defendant caused bodily injury to another person; and
> 2.  That the Defendant did so intentionally, knowingly, or recklessly.

The requested instruction was eventually withdrawn in favor of the submission of an almost identically worded "Court's General Instruction No. 23," by agreement of the parties.  The Court's General Instruction No. 23 simply identified the person bodily injured as "Gary K. Massey."  No instruction on mutual affray was given to the jury; that standard jury instruction (HAWJIC 9.21A) states the following:

> If you find that the prosecution has proven the offense of Assault in the Third Degree beyond a reasonable doubt, then you must also determine whether the prosecution has proven beyond a reasonable doubt that the fight or scuffle was not entered into by mutual consent.  This determination must be unanimous and is to be indicated by answering "Yes" or "No" on a special interrogatory which will be provided to you.

No special interrogatory on mutual affray (HAWJIC 9.21C) was given to the jury, either.

### 4.  Verdict and Sentencing

The jury found Henley guilty as charged.  Henley's sentencing hearing was held the day after trial concluded.  The State sought a sentence of 30 days' imprisonment, one year probation, and anger management treatment.  Defense counsel sought a sentence of probation because Henley had no prior criminal record.  He counter-argued that there was "no rational basis in the evidence that [Henley] has any anger management problems."  The circuit court then questioned defense counsel as to why probation would be necessary, if a probation officer would have "nothing to supervise," given that there did not seem to be a need to impose any special conditions involving drug, alcohol, or mental health treatment; or anger management.  Defense counsel responded that a probation officer would still monitor whether Henley had further contacts with law enforcement or was working or in school.

At that point, defense counsel remarked that he noticed that the court had "three individuals from Public Safety in the courtroom[.]"  That observation prompted defense counsel to point out that, under HRS § 804-4(a), "the right to bail shall continue after conviction of a misdemeanor"; defense counsel argued that Henley's $200.00 bail must continue.  Defense counsel stated that he intended to appeal Henley's conviction.

The State then asserted that Henley's bail should be
increased to $11,000.00 pending appeal.  The State reasoned,
"[Henley] is not from here.  Appeals take a long time. . . I
don't know what his living situation is now, however, there's
obviously the possibility over on the course of a lengthy appeal
that a defendant may not --"  Although the State did not finish
its sentence, the circuit court interrupted, "It's happened
quite often."  The State responded, "Exactly."  The State and
the circuit court seemed to imply that Henley would likely leave
Hawaiʻi during the course of his appeal.  Defense counsel
corrected the implication, stating

>           [T]hat's not true. . . [Henley] and his father moved here
>           from Arkansas. . . [H]is father started his construction
>           business over here so that – that's where they live now,
>           this is where they remain.  And this is where he will be
>           over the next several years . . . .   [R]ight now the only
>           indication is his father says they intend to stay here.

The State insisted that Henley's $200.00 bail be increased
pending appeal.  The circuit court disagreed with the State's
assertion that "bail can be increased," stating, "No, but the
bail can be adjusted to the risk.  He's now a convicted
misdemeanant and the risk of flight is very high in these
cases."  Defense counsel again argued that HRS § 804-4 supported
his contention that the circuit court could not increase
Henley's bail; the circuit court responded, "Okay.  I know
you're wrong on that one, but okay."  Accordingly, defense
counsel argued that if the circuit court was going to increase

11

bail, he asked it to limit the increase to $2,000.00, the maximum fine for a misdemeanor, "because [Henley's] father can post the bond today."  The court remarked that Henley's father's ability to pay the bond was "useful information."

At this point, Henley was allowed his right to allocution. Henley stated that he was focused on school and work and "get[ting] his life together[.]"  He stated that was trying to avoid jail time, which would cause him to lose his job, which would further hamper his ability to save for school.

After defense counsel concluded his sentencing arguments, the circuit court sentenced Henley to 30 days' imprisonment, with credit for any time served.  Although the circuit court stayed mittimus pending Henley's appeal, it also increased Henley's bail from $200.00 to $2,000.00 cash only, with no further hearing on bail.  Therefore, Henley was taken into custody and not released until his father paid the $2,000.00 cash only bail three days later.[3]

### B.  ICA Appeal

On appeal, Henley raised the following points of error:

> (1)  There was insufficient evidence to convict [Henley] of Assault in the Third Degree.
> . . . .
> (2)  The trial court abused its discretion in raising [Henley']s bail pending appeal in a misdemeanor case.
> . . . .

---

[3]     We note that the procedure in this case was unusual, as sentencing should precede any discussion of bail pending appeal.  Procedurally, trial courts should address sentencing before addressing any issues regarding bail on appeal.

> (3)   The trial court abused its discretion in sentencing [Henley] to 30 days jail as a first time offender.

In a summary disposition order ("SDO"), the ICA affirmed the circuit court's judgment of conviction and sentence.  State v. Henley, CAAP-13-0005595 (App. Jan. 29, 2015) (SDO) at 1.  As to the first point of error, the ICA held that sufficient evidence supported Henley's conviction, based on the jury's apparent determination that Massey's testimony (that Henley head-butted him without provocation) was more credible than Copp's and Henley's.  Henley, SDO at 3.

The ICA concluded that the second point of error was "without merit."  Id.  The ICA stated that Henley "plainly misreads HRS § 804-4" in arguing that the trial court is prohibited from changing the amount of bail after a defendant is convicted of a misdemeanor.  Id.  The ICA reasoned

> A defendant who is pending trial and is clothed with the presumption of innocence is in a different position than a defendant who has been adjudged guilty of a crime.  A defendant who is pending sentencing is also in a different position than a defendant who has been sentenced to a term of incarceration.  In addition, evidence adduced during the trial or sentencing may affect the trial court's evaluation of the appropriate bail amount and conditions for a defendant.  We conclude that the Circuit Court did not abuse its discretion in raising Henley's bail from $200 to $2000 (cash only) pending his appeal.

Henley, SDO at 4.  To support its conclusion, the ICA also cited to HRS § 804-9 (2014) for the following language:  "The amount of bail rests in the discretion of the justice or judge. . . .";  and HRS § 804-6 (2014) for the following language (with emphasis added):  "Unless otherwise ordered by the court the bail bond

13

given by any defendant prior to the defendant's conviction, shall, in cases where bail after conviction is permitted either absolutely or by order of the court, be continued as the bail of the defendant after conviction, and until the final determination of any subsequent proceedings in the cause."  Id.

As to the third point of error, the ICA noted that the circuit court is vested "with wide discretion" in imposing sentence, and that 30 days' incarceration was not an abuse of discretion, given the evidence adduced at trial that "Henley assaulted Massey, a sixty-eight-year-old man, by head-butting Massey above the right eye and . . . thr[owing] punches at Massey."  Id.

## III.  Standards of Review

### A.  Unrequested Jury Instructions

> As a general rule, jury instructions to which no objection has been made at trial will be reviewed only for plain error.  An error will be deemed plain error if the substantial rights of the defendant have been affected adversely.  Additionally, this court will apply the plain error standard of review to correct errors which seriously affect the fairness, integrity, or public reputation of judicial proceedings, to serve the ends of justice, and to prevent the denial of fundamental rights.

State v. Kikuta, 125 Hawai'i 78, 95, 253 P.3d 639, 656 (2011) (citing State v. Nichols, 111 Hawai'i 327, 334, 141 P.3d 974, 981 (2006)) (quotations marks and brackets omitted).

## B. Plain Error

"Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."  Hawai'i Rules of Penal Procedure ("HRPP") Rule 52(b) (1977).

## C. Bail

"It is settled that the determination of the amount of bail rests peculiarly within the discretion of the trial court.  An appellate court should not disturb or interfere with the exercise of such discretion, unless it is clearly abused."  Sakamoto v. Won Bae Chang, 56 Haw. 447, 451, 539 P.2d 1197, 1200 (1975) (citation omitted).

## D. Sentencing

This court has stated:

> [a] sentencing judge generally has broad discretion in imposing a sentence.  The applicable standard of review for sentencing or resentencing matters is whether the court committed plain and manifest abuse of discretion in its decision.  Factors which indicate a plain and manifest abuse of discretion are arbitrary or capricious action by the judge and a rigid refusal to consider the defendant's contentions.  And, generally, to constitute an abuse it must appear that the court clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment to the litigant.

State v. Kong, 131 Hawai'i 94, 101, 315 P.3d 720, 727 (2013) (quoting State v. Rivera, 106 Hawai'i 146, 154-55, 102 P.3d 1044, 1052-53 (2004)).

15

**IV.  Discussion**

On certiorari, Henley raises the following questions presented:  whether "(1) there was insufficient evidence to support his conviction; (2) the Circuit Court abused its discretion in raising his bail pending appeal; and (3) the Circuit Court abused its discretion in sentencing him to jail for a first offense."  As a preliminary matter, we agree with the ICA that the standard for appellate review compels the conclusion that sufficient evidence supported Henley's conviction as the jury apparently credited Massey's testimony, and credibility determinations are for the trier of fact. Henley, SDO at 3.  We accepted certiorari in this case, however, because the circuit court plainly erred in failing to instruct the jury on mutual affray, and we cannot say that this error is harmless.  Therefore, we vacate the ICA's Judgment on Appeal, which affirmed the circuit court's judgment of conviction and sentence, and remand this case for further proceedings. Although a retrial obviates the need for this court to address the second and third issues, we address the second issue to provide the circuit court with guidance on remand.  We do not address the third issue.

### A.     The Circuit Court Plainly Erred in Failing to Instruct the Jury on Mutual Affray

Although neither the State nor Henley has raised the issue, we note that the circuit court in this case was required to instruct the jury on mutual affray.  "[I]n our judicial system, the trial courts, not parties, have the duty and ultimate responsibility to insure [sic] that juries are properly instructed on issues of criminal liability."  State v. Adviento, 132 Hawaiʻi 123, 137, 319 P.3d 1131, 1145 (2014)(citations omitted); see also Nichols, 111 Hawaiʻi at 339, 141 P.3d at 986 ("[I]t is the duty of the trial court to see that the jury is properly instructed.").  HRPP Rule 30, titled "Instructions to the Jury," also reflects that ultimate responsibility for instructing the jury lies with the trial court.  See, e.g., subsection (c), which authorizes the trial court to refuse, approve, or modify requested instructions; and subsection (d), which authorizes the trial court to revise and/or combine instructions that were approved and/or not objected to, and which authorizes the trial court to prepare its own instructions if no written requests for instructions are made.

Henley was charged with Assault in the Third Degree under HRS § 707-712(1)(a), which states, "A person commits the offense of assault in the third degree if the person . . . [i]ntentionally, knowingly, or recklessly causes bodily injury

17

to another person[.]"  HRS § 707-712(2) goes on to state, "Assault in the third degree is a misdemeanor unless committed in a fight or scuffle entered into by mutual consent, in which case it is a petty misdemeanor."  "Mutual affray" is a "mitigating defense" to Assault in the Third Degree, reducing the offense from a misdemeanor to a petty misdemeanor.  Kikuta, 125 Hawai'i at 95-96, 253 P.3d at 656-57.

The circuit court, by agreement of the parties, gave the jury the standard HAWJIC 9.21 jury instruction, which covers the elements of Assault in the Third Degree enumerated in HRS § 707-712(1)(a).  The circuit court did not give the jury the standard HAWJIC 9.21A jury instruction on mutual affray, which tracks the language of HRS § 707-712(2), or the standard HAWJIC 9.21C special interrogatory regarding mutual affray.  We held in Kikuta that a trial court "must submit a mutual affray instruction to the jury where there is any evidence in the record that the injury was inflicted during the course of a fight or scuffle entered into by mutual consent. . . ."  Kikuta, 125 Hawai'i at 96, 253 P.3d at 657 (emphasis added).  The notes to HAWJIC 9.21A contain the same recommendation:  "When an Assault in the Third Degree instruction [HAWJIC 9.21] is submitted to the jury, the court must also submit a mutual affray instruction [HAWJIC 9.21A] and special interrogatory [HAWJIC 9.21C] where there is any evidence that the fight or

18

scuffle was entered into by mutual consent." We have previously found this recommendation to be "prudent," notwithstanding the introduction to the HAWJIC, which states, "Nothing herein contained shall be construed as an approval by the Supreme Court of the State of Hawai'i . . . of the substance of any of said instructions." Kikuta, 125 Hawai'i at 96 n.12, 253 P.3d at 657 n.12.

"[M]utual affray requires both parties to have approved of, or agreed to, a fight or scuffle, whether expressly or by conduct." Id. In this case, there was evidence that Massey was injured "during the course of a fight or scuffle entered into by mutual consent. . . ." Kikuta, 125 Hawai'i at 96, 253 P.3d at 657. First, the testimony may have suggested that Massey's decision to follow Copp and Henley caused an already tense situation to deteriorate. Massey admitted on cross-examination that Henley and Copp were voluntarily leaving the premises when Massey decided to follow them, and that Massey could have remained behind them at a distance. There was evidence that Copp, Henley, and Massey had already engaged in a few rounds of insults and name-calling. Officer Muna testified that Massey told him the verbal argument escalated as they all headed down the stairs.

Second, Copp and Henley testified that Massey initiated aggressive physical contact and attempted several fighting maneuvers upon Henley.  Both testified that Massey grabbed Henley's arm and jerked him forward as Henley was exiting the stairwell.  It was at this point that Henley shoved Massey away.  Undeterred, Massey stated, "[Y]ou're going to get it now," according to Copp's testimony.  Then, Massey tried to "tackle" Henley and put him in an "arm bar or choke."

Third, there was evidence to suggest that Massey persisted in his attempts to hurt Henley, even after Henley disengaged from the fight.  According to both Copp and Henley, when Massey was unable to tackle Henley or get him into an armbar or chokehold, Massey grabbed Henley's testicles.  Even after Henley sprang off of Massey, Copp testified that Massey "was still clinging onto Henley's shirt as Henley attempted to leave," which caused Copp to "karate chop" Massey's hand.

This testimony provided the evidence in the record that Massey's "injury was inflicted during the course of a fight or scuffle entered into by mutual consent. . . ."  Kikuta, 125 Hawaiʻi at 96, 253 P.3d at 657 (emphasis added).  Consequently, the circuit court should have given the jury an instruction and special interrogatory on mutual affray; the circuit court plainly erred in failing to do so.

Further, we cannot say that the omission of the mutual affray instruction was harmless beyond a reasonable doubt, as it is possible, on this record, that given a choice between convicting Henley on misdemeanor Third Degree Assault and the mitigated offense of petty misdemeanor assault, the jury could have convicted Henley on the latter.  See Kikuta, 125 Hawaiʻi at 97, 253 P.3d at 658 ("Inasmuch as it is the duty of the trial court to properly instruct the jury, the judgment of conviction must be vacated, without regard to whether timely objection was made, because there is a reasonable possibility that the error contributed to [the] conviction for misdemeanor assault in the third degree.") (citation and quotation marks omitted).  Accordingly, the ICA's judgment on appeal, which affirmed Henley's conviction, is vacated, and this case is remanded to the circuit court for a new trial.

B.    **The Circuit Court Abused its Discretion in Increasing Henley's Bail from $200.00 to $2,000.00 Cash Only.**

On certiorari, Henley argues that that the circuit court abused its discretion in increasing his bail pending appeal.  We agree.

Article I, section 12 of the Constitution of the State of Hawaiʻi provides, "Excessive bail shall not be required. . . . The court may dispense with bail if reasonably satisfied that the defendant . . . will appear when directed, except for a

defendant charged with an offense punishable by life imprisonment." Under HRS § 804-9, "[t]he amount of bail . . . should be so determined as to not suffer the wealthy to escape by the payment of a pecuniary penalty, nor to render the privilege useless to the poor." Further, under that statute, "the officer letting to bail should consider the punishment to be inflicted on conviction, and the pecuniary circumstances of the party accused." In setting bail, we have held that the determination of bail under HRS § 804-9 must be made "on an individualized basis. . . ." Pelekai, 75 Hawaiʻi at 366, 861 P.2d at 1210. In Sakamoto, 56 Haw. at 451, 539 P.2d at 1200, this court noted that bail is to be fixed in a reasonable amount, considering the financial status of the defendant and the punishment to be imposed upon him on conviction.

The circuit court abused its discretion in this case by not tailoring the bail to Henley's individual circumstances. The police initially set Henley's $200.00 bail pursuant to the chief of police's authority under HRS § 804-5 (2014) ("[W]here the punishment for the offense charged may not exceed two years' imprisonment with or without a fine, . . . the chief of police or any person name by the chief of police . . . may admit the accused person to bail."). Apparently, $200.00 bail was seen as an appropriate amount of bail under the circumstances, as

neither the district nor circuit court judges that handled Henley's case changed the amount.

As this court recently noted in State v. Kiese, 126 Hawai'i 494, 510, 273 P.3d 1180, 1196 (2012), HRS § 804-4 provides that "[t]he right to bail shall continue after conviction of a misdemeanor," and our case law holds "an accused misdemeanant . . . is entitled to bail as a matter of right after conviction and pending appellate review." (Citing State v. Ortiz, 74 Haw. 343, 356, 845 P.2d 547, 553 (1993)). Although Henley's right to bail continued post-conviction, the circuit court had the authority to change the amount of bail post-conviction pursuant to its discretionary authority under HRS § 804-9. In exercising its discretion, it was required by HRS § 804-9, governing the amount of bail, to "consider the punishment to be inflicted on conviction, and the pecuniary circumstances of the party accused."

First, regarding the "punishment to be inflicted," bail was initially set at $200.00 when Henley was facing the possibility of one year in jail. The circuit court ultimately sentenced Henley to 30 days' imprisonment. Despite that, the circuit court multiplied the amount of bail tenfold. Moreover, that the increased bail amount was to be paid in cash only was equivalent to increasing bail up to $20,000.00, because a bond normally may be obtained for five to fifteen percent of the bail amount in

23

Hawai'i. National Conference of State Legislatures, Bail Bond Agent Business Practices, available at http://www.ncsl.org/research/civil-and-criminal-justice/bail-bond-agent-business-practices.aspx (last visited Dec. 15, 2015). Because the issue was not raised, we do not address whether "cash only" bail is permissible under the law, but this case highlights the unfairness in conditioning bail on payment in cash only.

Second, regarding Henley's "pecuniary circumstances," Henley was 19 years old. Although he was apparently working in telecommunications, he was determined to be indigent and was represented by court-appointed counsel throughout his trial. The circuit court did not find any specific facts about Henley's individual circumstances that would have justified an increase in bail. The State and the circuit court seemed to assume that a bail increase was necessary because Henley was a flight risk. This assumption was based merely on the fact, however, that Henley and his father had apparently recently moved to Hawai'i. In other words, the increase of bail was premised upon recency of arrival and not risk of flight. Defense counsel interjected that Henley and his father had moved to Hawai'i from Arkansas, that his father started a construction business in Hawai'i, and that the family intended to stay. Nevertheless, the circuit

court persisted in raising Henley's bail simply because Henley was a recent arrival. This approach overtly discriminates against recent arrivals, with no indication as to the length of time one must live in this state such that bail will not be elevated on that basis.

The increase in bail was also directly contradicted by the court's comments. The circuit court refused to place defendant on probation, despite defense counsel's request. The circuit court did not believe anger management, drug and/or alcohol treatment, or mental health treatment was appropriate. That Henley had no other apparent problems reaffirms that the increase in bail was simply based on the fact of conviction and not determined on an individualized basis.

Rather, the circuit court apparently increased Henley's bail amount based on Henley's father's ability to pay. Defense counsel argued at sentencing that Henley's increased bail should be limited to $2,000.00, the maximum fine for a misdemeanor, "because [Henley's] father can post the bond today." Defense counsel represented that Henley's father could post the bond (i.e., $100.00 to 350.00, or five to fifteen percent of the proposed bail amount). The circuit court remarked that that was "useful information." In setting bail at $2,000.00 cash only, the circuit court actually set bail even beyond what Henley's father stated he could pay that day. Indeed, Henley's father

was not able to pay the $2,000.00 cash only bail until three days later.

There is also evidence on the record that the circuit court used the maximum amount of the fine ($2,000.00) to determine the amount of bail, as that is what defense counsel requested as a last resort. Lacking any other justification based on Henley's individual circumstances, this method of increasing bail to match the maximum fine is improper. Instead, at its core, the bail increase was based simply on the fact that defendant had been convicted, sentenced to jail, and had allegedly "recently" arrived in Hawai'i, despite his family having settled here. This is clearly contrary to the intent of our bail statutes with respect to misdemeanants. In short, the circuit court clearly abused its discretion in increasing Henley's bail from $200.00 to $2,000.00 cash only.

## V.  Conclusion

The circuit court plainly erred in failing to instruct the jury on mutual affray. Based on this error, Henley's judgment of conviction for Assault in the Third Degree must be vacated. For future guidance, however, we also note that the circuit court abused its discretion in increasing Henley's $200.00 bail to $2,000.00 cash only bail pending appeal. Therefore, the ICA's Judgment on Appeal, is vacated, as is the circuit court's judgment of conviction and sentence. This case is remanded to

the circuit court for further proceedings consistent with this

opinion.

Shawn A. Luiz                        /s/ Sabrina S. McKenna
for petitioner
                                     /s/ Richard W. Pollack
Loren J. Thomas
for respondent                       /s/ Michael D. Wilson