**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-19-0000864**
**09-MAR-2021**
**08:08 AM**
**Dkt. 94 MO**

CAAP NO 19-0000864

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

STATE OF HAWAIʻI, Plaintiff-Appellee,
v.
PAULA SIAOSI NGALU, JR., also known as
SIAOSI NGALU, JR., Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CASE NO. 2CPC-18-0000149)

**MEMORANDUM OPINION**
(By:  Leonard and Nakasone, JJ. with Ginoza,
Chief Judge, concurring and dissenting separately)

Defendant-Appellant Paula Siaosi Ngalu, Jr. (**Ngalu**) appeals from the Circuit Court of the Second Circuit's (**Circuit Court**) Amended Judgment; Conviction and Sentence (**Judgment**) filed on November 20, 2019.[1]  Following a jury trial on Assault in the First Degree (**Assault First**), Ngalu was convicted of the included offense of Assault in the Second Degree (**Assault Second**) under Hawaii Revised Statutes (**HRS**) § 707-711 (Supp. 2017)[2] and sentenced to a five-year term of imprisonment.

---

[1]     The Honorable Rhonda I.L. Loo presided.

[2]     HRS § 707-711 provides:

(1) A person commits the offense of assault in the second degree if:
        (a) The person intentionally, knowingly, or recklessly causes substantial bodily injury to another;
        (b) The person recklessly causes serious bodily injury to another . . . .

On appeal, Ngalu contends that the Circuit Court: (1) erred by refusing the Defense of Others jury instruction; (2) plainly erred by instructing the jury on Accomplice Liability; (3) plainly erred by omitting a Mutual Affray instruction with the Assault in the Third Degree (**Assault Third**) instruction; (4) erred in denying Ngalu's motions for judgment of acquittal (**MJOA**); and (5) Ngalu contends that he was denied effective assistance of counsel and a right to a fair trial.

As explained below, because we hold that the Defense of Others and Mutual Affray instructions should have been given, and these errors were not harmless beyond a reasonable doubt, we vacate and remand for a new trial.

## I.  BACKGROUND

The State of Hawaiʻi (**State**) charged Ngalu via Felony Information and Non-Felony Complaint[3] filed on March 9, 2018, along with a co-defendant Foukimoana Finau[4] (**Finau**) as principals and/or accomplices, with Assault First in violation of HRS § 707-

---

[3]     The Felony Information charged as follows:

COUNT ONE: 18-004028-001

That on or about the 27th day of January, 2018, in the County of Maui, State of Hawaii, FOUKIMOANA **FINAU**, also known as FOU **FINAU**, also known as SIONE PEUAOPE **FINAU**, and PAULA SIAOSI **NGALU**, JR., also known as SIAOSI **NGALU**, also known as SIAOSI **NGALU**, JR., as principals and/or accomplices, did intentionally or knowingly cause serious bodily injury to Makoanui Anzai, thereby committing the offense of Assault in the First Degree in violation of Section 707-710(1) of the Hawaii Revised Statutes.

"Serious bodily injury" means bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ.

(**Bolding in original.**)  In Count Two, Ngalu was charged with Disorderly Conduct, which was dismissed by the State prior to trial.

[4]     A separate complaint was filed in 2CPC-18-0000148, in which Finau was charged with Assault First and Disorderly Conduct under HRS § 711-1101(1). See In re Estate of Kam, 110 Hawaiʻi 8, 12 n.5, 129 P.3d 511, 515 n.5 (2006)(appellate courts may take judicial notice of records in a related case not appearing in the record on appeal).  Finau entered a no contest plea to a lesser charge of Assault Second and was sentenced to five years imprisonment. The Disorderly Conduct charge was dismissed.

2

710(1), for intentionally or knowingly causing serious bodily injury to Makoanui Anzai (**Anzai**).

The following facts were adduced at a jury trial, which commenced on March 12 through March 15, 2019, when the jury returned its verdict. The incident giving rise to the assault charge in this case occurred in the parking lot outside Lava's Bar and Grill (**Lava's**), a nightclub in Kīhei, Maui, on January 27, 2018, shortly after Lava's closed at 1:30 a.m. Lava's is located within a complex with multiple bars and nightclubs known as "Triangles" or "The Triangle." Prior to the assault incident in the parking lot, Anzai and Ngalu had a prior confrontation in Lava's at around 11:30 p.m., when Ngalu confronted Anzai about staring at Ngalu and disrespecting his fiancée. Bouncers intervened, Ngalu and his fiancée left Lava's, and were socializing with friends in the parking lot until Lava's closed. After Lava's closed, around a hundred Lava's patrons exited the bar, including Anzai. In the parking lot, Ngalu confronted Anzai a second time, and the encounter turned physical. The witnesses' testimonies were conflicting about the sequence of events in the parking lot confrontation between Anzai and Ngalu, and the role of Finau in the confrontation. Anzai claimed that he was assaulted by two men, and was struck a total of three times -- the first time in the face, the second time in the jaw, and the third time being kicked to the head after he had fallen to the ground. Testimony varied between the witnesses as to how, by whom, and when Anzai was struck. With the exception of Ngalu's fiancée, the other eyewitnesses and parties all had been drinking. Anzai suffered a broken jaw from the confrontation, was flown to Queen's Medical Center in Honolulu for surgery for his jaw, and still experienced the effects of his injury at the time of trial.

### Testimony of complainant Anzai

Anzai arrived at Lava's around 11:30 p.m. with friends, dressed in a black jacket and black pants. Anzai was 6'3" tall and weighed about 360 pounds. While at the bar, Anzai consumed

3

two beers and two mixed drinks.  He had an initial confrontation with Ngalu inside the bar.  He did not know Ngalu and had never seen him before, and described Ngalu as "aggressive."  Some bouncers escorted Ngalu and his friends downstairs, but Anzai was not asked to leave.  Anzai stayed at Lava's for another 30-45 minutes until the bar closed, and he left.  In the parking lot, Ngalu confronted Anzai again, and Anzai told Ngalu that he didn't know Ngalu or Pagan, told Ngalu he was not "disrespecting" anyone, and offered to shake Ngalu's hand.  Ngalu refused to shake hands and just stared at Anzai.  About thirty to forty people were in the parking lot at this time.  Anzai turned away from Ngalu to walk towards a friend's car, when he was hit in the face from behind, which felt like a "big sting."  He did not see who had hit him.  As Anzai turned to see who had hit him, Anzai heard someone yell, "Fou, what are you doing?"[5] and he was hit a second time in the jaw, by Ngalu.  With the second hit, Anzai felt and heard a "crack" to his jaw and believed his jaw was broken.  He lost his balance, and began to fall.  Ngalu kicked Anzai on the right side of his face as Anzai fell.  This was same side of the face that Ngalu had struck earlier.  Anzai remained on the ground for ten seconds before standing up, holding his "hanging" jaw, and was in a lot of pain.  Anzai saw Ngalu standing over him after he fell down, and also saw Finau lingering around.  Anzai gave a statement to the responding police officer.  Anzai denied telling the police officer that he was first approached by Finau instead of Ngalu, or that Finau said Anzai was disrespecting Ngalu's fiancée.  Anzai did not try to fight back or hit anyone.  Anzai's friend drove him to the hospital, and Anzai was later flown to Queen's Hospital in Honolulu for surgery to his jaw.  Anzai's jaw was wired shut for about three months, during which time he was unable to speak, eat solid foods, or move his jaw, resulting in a 60-pound weight loss.  He experienced loss of taste, permanent jaw nerve damage,

---

[5]     Anzai recognized the name "Fou" as a nickname for Finau, who was Anzai's younger brother's classmate.

loss of sensation to the lower jaw, migraines, and jaw pain that continued through the date of trial.

### Testimony of Officer Kemfort

Officer Apalo Kemfort (**Officer Kemfort**) responded to the parking lot area of Kīhei Kalama Village at about 1:44 a.m., where he saw a crowd of people "all hyped up and enraged[.]" He found Anzai seated on the asphalt "shocked, dazed" and "confused[.]" Anzai's mouth was bleeding and bone was sticking out of his mouth. Anzai said two males caused his injuries, identifying one as "Fou Finau" and the other one was unknown to Anzai. It was difficult to understand Anzai since Anzai's mouth would fill with blood and saliva when he tried to talk. The officer photographed Anzai's injuries, searched for the suspects, but was unable to find them. Officer Kemfort already knew Finau from other cases in the Kīhei area, for underage drinking, and causing a disturbance. The officer's written report included a statement by Anzai, that Finau had punched him in the back of the head and that he was kicked while on the ground. Anzai subsequently identified Finau and Ngalu to a detective, as the individuals who had assaulted him.

### Testimony of eyewitness Jackson

Eyewitness Gabriel Jackson (**Jackson**) testified that he was briefly at Lava's with two friends and had one drink, before heading to another bar in Triangle's at about 1:00 a.m. There were at least 30 people in the parking lot. He observed a man dressed in black (Anzai) walking in the parking lot. Anzai was "punched once[,]" fell to the ground, where "another person [came] up and kick[ed] him."[6] The male who punched Anzai had

---

[6] Jackson testified as follows:

> Q. Okay. What happened after that – after he got punched?
>
> A. Kind of just noticed him weaken. And then as he went down, that's when the next –– it was quick. It was kind of just right after the other. So right after he got hit the first time, the next guy came in and he just

(continued...)

"coppery bleached" hair, and the same male left the parking lot afterward, heading toward South Kīhei Road. The other male who kicked Anzai had a medium build, was wearing a "white T-shirt", and went towards the back of the parking lot afterward. Jackson did not recall making prior statements to the police that night, but testified that he "maybe" said that "the person who hit" Anzai was wearing a maroon tank top. Jackson was "pretty sure" that the person who kicked Anzai was wearing a white shirt."

### Testimony of eyewitness Fehoko

Eyewitness Denney Fehoko (**Fehoko**), Finau's uncle who lived with Finau, was also at Lava's with friends that night, where he had four beers. He left Lava's at the 1:30 a.m. closing time to join friends in the parking lot. He heard females yelling "stop it" and noticed a "fight" going on in the parking

---

[6](...continued)
kicked him, and that finished it.

Q. So you said a next guy came in.

A. Yes.

Q. Where did that guy come from?

A. I would say he came more from his left side, came from the left side, and then that's when he gave him the kick. And then soon after that, he just left the scene.

Q. Okay. The second guy, was there -- did you notice any confrontation or conversation or anything between the person who got attacked and the second guy?

A. No.

Q. No. So did that person just also come out of nowhere?

A. Yes.

Q. And this second guy, you -- when you first observed the second guy, you said that's because he -- you saw him kick --

A. Uh-huh.

Q. -- him on the ground?

A. Right.

6

lot with Anzai and Ngalu.  Fehoko knew Anzai from a party, and knew Ngalu from childhood.  Anzai was on the ground, and Ngalu was "running" to the fight, and kicked Anzai in the face.  He did not see Anzai fall.  There were about 30 to 40 people in the parking lot.  He was on the other side of the parking lot, and there were a couple of people between him and the fight.  Fehoko saw Finau walking away after the fight when the crowd dissipated, but did not see Finau hit anyone.  Finau had frosted blonde hair, while Ngalu did not.  On cross-examination, Fehoko admitted seeing Finau running away from the area.  Fehoko did not see how the fight started.  He saw Ngalu kick Anzai once, and did not see Ngalu punch Anzai; however, in a prior police statement he said he saw Ngalu punch Anzai once on the side of the head.  From the time of the first "screaming" until everyone dispersed, it was "pretty quick" and "fast."

### Ngalu's statement to the police

Ngalu gave a statement to a police detective on February 14, 2018, a few weeks after the incident.  The recorded statement was played for the jury, in which Ngalu recounted the following details about the second confrontation with Anzai in the parking lot.  As Ngalu and Anzai were speaking, Finau approached Anzai from the right rear side and punched Anzai on the right side of the face.  Ngalu did not know that Finau had been there.  Anzai then punched Ngalu, a female hit Ngalu on the back, and Ngalu then punched Anzai on his head, causing Anzai to fall.  Ngalu told his fiancée, "Let's go," and they left.  When Anzai was on the ground, Finau punched him.  Ngalu felt that Anzai hit Ngalu, probably thinking that Ngalu was the one who hit him.  In total, Ngalu punched Anzai once, and Finau punched Anzai "a couple times."  Ngalu hit Anzai only one time, and denied kicking Anzai or seeing anyone kick Anzai.  Ngalu said Finau was "like family" but he rarely saw Finau.  Ngalu denied being with Finau at the time of the incident, and said Finau showed up randomly.

### Physician's testimony

The Maui Memorial Hospital emergency room physician who treated Anzai on the night of the incident diagnosed a jaw fracture. CT scans were done for Anzai's head, neck, and face, and Anzai was then transferred to Queen's Medical Center to be treated by a oral maxillary facial surgeon. Anzai's jaw was broken in three different parts, with only soft tissue holding his jaw in place. Anzai's injuries were consistent with "a great deal of force to the face[,]" and could have resulted from one hit, two hits, or a fall to the ground, but were not consistent with being struck on the back of the skull. The doctor opined that a "hit alone to the top of the head without any other extenuating circumstances" could not cause the type of fracture Anzai sustained, but "force to the top of the head and a subsequent fall" could possibly cause that type of fracture. A large person could cause this degree of damage with one hard hit to the face. If enough force were applied to the right side of the mandible, it could cause a break in the left portion. At a subsequent examination a week prior to trial, on March 5, 2019, Anzai still suffered numbness and nerve damage at the injury site, altered sense of taste and difficulty with the bottom right side of his face. The doctor opined, to a reasonable medical probability, that these symptoms were due to the injury Anzai sustained on January 27, 2018.

### Denial of MJOA

After the State's case-in-chief, Ngalu moved for a Judgment of Acquittal, which was denied.

### Testimony of Pagan (Ngalu's fiancée)

Ngalu's fiancée Kaylee Sylva Pagan (**Pagan**) accompanied Ngalu, along with friends, to Lava's at around 11:00 p.m. Ngalu, who was six feet tall and weighing about 300 pounds, wore a maroon shirt, shorts and slippers. Finau was an acquaintance of Ngalu and not his friend. Pagan described Finau as "not a real pleasant person to be around[,]" and that Finau was a drug user and liked to "get in trouble[.]" Ngalu had at least seven drinks

that evening, consuming three at a friend's house before heading to Lava's, followed by three to four beers in twenty to thirty minutes at Lava's. Pagan was not drinking. Pagan noticed Anzai staring at her and Ngalu, and his glaring made her feel uncomfortable because she did not know why Anzai was staring at them. She and Ngalu ended up leaving Lava's after 20 to 30 minutes, following Ngalu's confrontation with Anzai. Pagan and Ngalu stayed in the parking lot area where her car was parked, talking with their friends. At closing time, when people began leaving the bars, there was a second confrontation in the parking lot between Ngalu and Anzai, when Finau "came out of nowhere" and struck Anzai on the right side of his jaw. Pagan stood behind Ngalu because she was afraid of getting hurt by Anzai and by the crowd around them.[7] A female came from behind and hit Pagan's hand, saying she was trying to get to "Makoa" (Anzai's first name). After exchanging words with the female, Pagan turned to see Ngalu standing by her, with Finau "coming out of a hit" and Anzai "dropping to the ground." She did not see Ngalu hit Anzai, but she was distracted by the female who hit her. Pagan told Ngalu that she had been hit. Pagan denied that Ngalu ran up to the fight, and said the crowd swarmed them and pushed them towards the fight.

---

[7] Pagan testified in relevant part as follows:

> A. . . . that's when Fo [Finau] came out of nowhere and had hit him on the right side of his jaw. And at that point, I was standing kind of behind [Ngalu] and holding onto his arms because I was scared and I didn't feel – I didn't feel safe.
>
> Q. You were scared. What were you scared of?
>
> A. I was scared of getting hurt. I was scared of him getting hurt.
>
> Q. Getting hurt by whom?
>
> A. By Makoa, by the crowd. There was a crowd around us. I didn't want someone from the crowd to swing at us . . . .

### Testimony of Ngalu

Ngalu testified that he and Pagan left Lava's because Anzai's staring made them uncomfortable, and he and Anzai exchanged words about it at Lava's. Ngalu had two to three beers prior to arriving at Lava's, and then three to four beers at Lava's. Outside in the parking lot, Ngalu confronted Anzai a second time after Lava's closed, because Anzai was staring at them again as he was leaving. Ngalu was six feet tall, but Anzai was taller than him. Ngalu denied being loud, aggressive or confrontational with Anzai. Ngalu knew that Anzai was dating Ngalu's ex-girlfriend and believed that may be why Anzai did not like him. Ngalu claimed he confronted Anzai not to start a fight, but because it was a small island, they would likely run into each other again, so he wanted to clear the air and "squash" the situation. He denied that Anzai tried to shake his hand. Anzai told Ngalu he did not know Ngalu, and Anzai turned to walk away. Ngalu also turned to rejoin Pagan and their group of friends.

At that moment, Finau "came out of nowhere and whacked [Anzai]." Anzai then turned and hit Ngalu on the chest with a closed fist. Ngalu then hit Anzai on top of his head as a "natural reaction[.]" Finau then punched Anzai a second time and Anzai fell to the ground. Ngalu denied kicking Anzai. Finau was not part of Ngalu's group of friends. As Finau hit Anzai, Pagan pulled Ngalu back and told him that she had been hit. Ngalu explained, "I wanted to leave because I didn't want to get hit again or I didn't want her to get hit so we turned around and walked away." Ngalu denied hitting Anzai in the jaw, and said he hit Anzai only one time. Ngalu agreed that between himself and Finau, the two of them against Anzai, that Anzai was punched in the face three times. A large crowd in the parking lot surrounded them, trying to see the fight. The crowd was close, within arm's length. There were two or three other fights happening at the same time. When asked if he intended to hurt

Anzai, Ngalu testified:

> A. No. I was trying to protect myself. I was trying to protect myself protect my fiancee. She was behind me and it was -- so I guess to give me time to back up -- even I didn't know what -- if he was going to hit me again or if someone else was going to hit my fiancee. It was kind of a reaction because I had gotten hit.

Ngalu did not know why Finau "false'd" Anzai, but had previously seen Finau start a fight for no reason. Finau was related to Ngalu, but Ngalu considered Finau to be more of an acquaintance, and did not associate with Finau, because "anyone that associates with him is trouble also."

### Denial of renewed MJOA

After the defense rested its case-in-chief, the Circuit Court denied Ngalu's renewed MJOA.

### Jury instructions

Along with the jury instruction on the charged offense of Assault First, the Circuit Court instructed the jury on the included offenses of Assault Second and Assault Third. The included offense instruction for Assault Third was in Instruction No. 18, as follows:

> If and only if (1) you find the Defendant PAULA SIAOSI NGALU, JR., also known as SIAOSI NGALU, also known as SIAOSI NGALU, JR. not guilty of Assault in the First Degree, or you are unable to reach a unanimous verdict as to Assault in the First Degree, and in addition (2) you find the Defendant not guilty of both of the alternatives of Assault in the Second Degree, or you are unable to reach a unanimous verdict as to both of the alternatives, or you find the Defendant not guilty of one of the alternatives and are unable to reach a unanimous verdict as to the other alternative, then you must consider whether the Defendant is guilty or not guilty of the included offense of Assault in the Third Degree as a principal and/or accomplice.
>
> A person commits the offense of Assault in the Third Degree if he intentionally, knowingly, or recklessly causes bodily injury to another person.
>
> There are two material elements of the offense of Assault in the Third Degree, each of which the prosecution must prove beyond a reasonable doubt.
>
> 1. That on or about January 27, 2018, in the County of Maui, State of Hawaii, the Defendant caused bodily injury to Makoanui Anzai; and

11

> 2. That the Defendant did so intentionally,
> knowingly, or recklessly.

An instruction for Assault in the Third Degree by Mutual Affray
(**Mutual Affray**) was not requested by the defense, nor given by
the court *sua sponte.*[8]  The jury instruction for Defense of
Others When Deadly Force Is Not At Issue (**Defense of Others**)[9] was

---

[8]    Hawaiʻi Standard Jury Instructions Criminal (**HAWJIC**) 9.21A
provides:

> If you find that the prosecution has proven the
> offense of Assault in the Third Degree beyond a
> reasonable doubt, then you must also consider whether
> the fight or scuffle was entered into by mutual
> consent, whether expressly or by conduct.
>
> You must determine whether the prosecution has proven beyond
> a reasonable doubt that the fight or scuffle was not entered
> into by mutual consent.  This determination must be
> unanimous and is to be indicated by answering 'Yes' or 'No'
> on a special interrogatory that will be provided to you.

See HRS § 707-712(1)(a) (2014).

[9]    Ngalu requested the following jury instruction on Defense of
Others, which is based on HAWJIC 7.02B:

> Defense of others is a defense to the charges of
> Assault in the First Degree, Assault in the Second Degree,
> Assault in the Third Degree.  The burden is on the
> prosecution to prove beyond a reasonable doubt that the
> force used by the defendant was not justifiable.  If the
> prosecution does not meet its burden, then you must find the
> defendant not guilty.
>
> The use of force upon or toward another person is
> justifiable to protect a third person if, under the
> circumstances as the defendant reasonably believes them to
> be, the third person would be justified in using force to
> protect herself on the present occasion against the use of
> unlawful force by the other person and the defendant
> reasonably believes that his intervention is immediately
> necessary to protect the third person.  The reasonableness
> of the defendant's belief that the use of force was
> immediately necessary shall be determined from the viewpoint
> of a reasonable person in the defendant's position under the
> circumstances of which the defendant was aware or as the
> defendant reasonably believed them to be.  The defendant may
> estimate the necessity for the use of force under the
> circumstances as he reasonably believes them to be when the
> force is used, without retreating.  The defendant's belief
> that the use of force was immediately necessary may be
> mistaken, but reasonable.

(continued...)

12

not given over objection by defense counsel:

> THE COURT: [...]
>
> 7.02B, the Court is going to refuse that.
>
> [Defense counsel], the second -- the second version that you submitted, 7.02B, the most -- the newest version, most recent version, do you want to -- the Court is refusing this. Do you want to say anything regarding your 7.02B, the most recent version?
>
> [DEFENSE COUNSEL]: The objection that I have to it being denied is that I do believe that there is evidence to support a defense of others instruction for the jury.
>
> THE COURT: [Prosecutor]?
>
> [PROSECUTOR]: The State believes that there's no scintilla of evidence, namely -- well, the defendant himself testified that the reason that he hit

---

[9](...continued)
> "Force" means any bodily impact, restraint, or confinement, or the threat thereof.
>
> "Unlawful force" means force which is used without the consent of the person against whom it is directed and the use of which would constitute an unjustifiable use of deadly force or force. A person cannot consent to the infliction of death, serious bodily injury, or substantial bodily injury.
>
> "Serious bodily injury" means bodily injury which creates a substantial risk of death or which causes serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ.
>
> "Substantial bodily injury" means bodily injury which causes: A major avulsion, laceration, or penetration of the skin, a bone fracture, a tearing, rupture, or corrosive damage to the esophagus, viscera, or other internal organs.
>
> "Bodily injury" means physical pain, illness, or any impairment of physical condition.
>
> Defense of others is not available for the offense of Assault in the Third Degree if the prosecution proves that:
>
> (1) the defendant was reckless in believing that he/she was justified in using deadly force or force to protect a third person against another person; or
>
> (2) the defendant was reckless in acquiring or failing to acquire any knowledge or belief which was material to the justifiability of his use of force to protect a third person against another person.

13

the victim, Makoa, was because Makoa hit him first after Finau hit him and that it was a natural reaction.  The -- he never testified that the reason that he hit Makoa was to defend his girlfriend.  His girlfriend testified in this case, and she never testified that she was directly threatened by Makoa nor did she testify that she -- that he hit her or that she herself felt the need to defend herself.  So the State doesn't believe that this applies in this case.

. . . .

THE COURT: No? Okay.

The Court agrees as well that there appears to have been no evidence regarding defense of others, so the Court is going to refuse the most recent, 7.02B, submitted by defense.

### **Verdict, sentencing, appeal**

Following the Circuit Court's instructions to the jury and closing arguments on March 15, 2019, the jury returned a verdict the same day, finding Ngalu guilty of the included offense of Assault Second in the first alternative for intentionally, knowingly, or recklessly causing substantial bodily injury to Anzai, as principal or accomplice to Finau. Ngalu was sentenced on November 20, 2019, and thereafter timely filed a notice of appeal.

On appeal, Ngalu contends that the Circuit Court (1) erred when it refused his request to instruct the jury on the Defense of Others; (2) plainly erred in instructing the jury on Accomplice Liability; (3) plainly erred in omitting a Mutual Affray instruction with the Assault Third instruction; (4) erred in denying Ngalu's MJOA and renewed MJOA; and (5) Ngalu contends that he was denied effective assistance of counsel and a right to a fair trial.  Because we vacate and remand for a new trial based on instructional errors, we do not reach Ngalu's point of error regarding ineffective assistance of his trial counsel.[10]

---

[10]     During cross-examination of the detective about the photographic lineup, defense counsel attempted to ask about a notation made by Anzai in the comment section of the photographic lineup, but the Circuit Court sustained the State's hearsay objection.  Ngalu claimed that his counsel's failure to prepare for this questioning, as well as the failures to preserve the instructional errors he now raises on appeal, constituted ineffective

(continued...)

## II. STANDARD OF REVIEW

### A. Jury Instructions

When jury instructions or the omission thereof are at issue on appeal, the standard of review is whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading. Erroneous instructions are presumptively harmful and are a ground for reversal unless it affirmatively appears from the record as a whole that the error was not prejudicial. Error is not to be viewed in isolation and considered purely in the abstract. It must be examined in the light of the entire proceedings and given the effect which the whole record shows it to be entitled. In that context, the real question becomes whether there is a reasonable possibility that error may have contributed to conviction. If there is such a reasonable possibility in a criminal case, then the error is not harmless beyond a reasonable doubt, and the judgment of conviction on which it may have been based must be set aside.

State v. Nichols, 111 Hawai'i 327, 334, 141 P.3d 974, 981 (2006) (brackets omitted) (quoting State v. Gonsalves, 108 Hawai'i 289, 292-93, 119 P.3d 597, 600-01 (2005)) (citations omitted). "[E]rroneous jury instructions may be grounds for reversal despite counsel's failure to object at trial because it is ultimately the trial court that is responsible for ensuring that the jury is properly instructed." State v. Kikuta, 125 Hawai'i 78, 95, 253 P.3d 639, 656 (2011) (citing Nichols, 111 Hawai'i at 335, 141 P.3d at 982) (brackets and internal quotation marks omitted). "[O]nce instructional error is demonstrated," the reviewing court will vacate the judgment "without regard to whether timely objection was made, if there is a reasonable possibility that the error contributed to the defendant's conviction, i.e., that the erroneous jury instruction was not harmless beyond a reasonable doubt." Id. (citations, brackets and internal quotation marks omitted).

### B. Motion for Judgment of Acquittal

The standard to be applied by the trial court in ruling upon a motion for a judgment of acquittal is whether, upon the evidence viewed in the light most favorable to the prosecution and in full recognition of the province of the

---

[10](...continued)
assistance of counsel.

15

> trier of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt. An appellate court employs the same standard of review.

State v. Hicks, 113 Hawaiʻi 60, 69, 148 P.3d 493, 502 (2006) (quoting State v. Maldonado, 108 Hawaiʻi 436, 442, 121 P.3d 901, 907 (2005)).

### III. DISCUSSION

**A. The Circuit Court erred by refusing to instruct the jury on the Defense of Others jury instruction where there was support in the evidence to do so.**

Ngalu contends that the Defense of Others instruction should have been given at trial because there was more than a scintilla of evidence to support giving the instruction. The State responds that the instruction was correctly refused under HRS § 703-305(1)(a), because there was no evidence showing that Pagan needed protection from Anzai or that Ngalu believed circumstances were such that Pagan needed protection from Anzai.

"It is well-established that a defendant is entitled to an instruction on a defense having any support in the evidence, no matter how weak, unsatisfactory, or inconclusive the evidence might have appeared to the court." Kikuta, 125 Hawaiʻi at 90, 253 P.3d at 651 (citations omitted). HRS § 703-305 (2014), entitled "Use of force for the protection of other persons" provides:

> (1) Subject to the provisions of this section and of section 703-310, the use of force upon or toward the person of another is justifiable to protect a third person when:
>
> > (a) Under the circumstances as the actor believes them to be, the person whom the actor seeks to protect would be justified in using such protective force; and
> >
> > (b) The actor believes that the actor's intervention is necessary for the protection of the other person.

In this case, there was evidence to support an instruction on the Defense of Others. Ngalu testified that after Finau hit Anzai, Anzai hit Ngalu, and Ngalu hit Anzai back. Ngalu believed that Anzai mistakenly thought Ngalu had struck him

16

instead of Finau. They were surrounded by a crowd and it appears from the record that the circumstances were chaotic and volatile. Pagan was standing behind Ngalu at about that time, and Ngalu believed there was a chance Pagan could get hit. Ngalu claimed he "didn't know . . . if [Anzai] was going to hit [Ngalu] again or if someone else was going to hit [Pagan]." In striking Anzai at that time, Ngalu explained, "I was trying to protect myself" and "protect my fiancee.".

The Defense of Others "permits a person to use force to protect another person when the actor believes the other person would have been justified in using force to protect [her]self and believes that his intervention is necessary to protect the other person." HRS § 703-305 cmt. (2014); State v. Mark, 123 Hawaiʻi 205, 220, 231 P.3d 478, 493 (2010). "In other words, if the actor knew that the third person could not reasonably believe that the use of force was justified, the actor could not use force in the protection of the third person." Mark, 123 Hawaiʻi at 221, 231 P.3d at 494.

The record shows that there was evidence to support Ngalu's belief that Pagan would be justified in using protective force in light of the circumstances at the time. See HRS § 703-305(1)(a). Prior to the incident in the parking lot, Pagan was already uncomfortable from Anzai's staring at her and Ngalu inside of Lava's, which led to her and Ngalu leaving the bar. Pagan testified that when Finau "came out of nowhere" and hit Anzai in the jaw, she stood behind Ngalu and held onto his arms because she was scared and did not feel safe. After Finau hit Anzai, Pagan testified that the crowd swarmed around them, and Pagan was hit by a female who said she was trying to get to "Makoa" (Anzai). Both Ngalu and Pagan testified that Pagan told Ngalu she had been hit. Pagan expressed fear of Anzai, testifying that she felt "scared of getting hurt" "[b]y Makoa" and "by the crowd" as she stood behind Ngalu. The crowd consisted of around 30 to 40 people who were "all hyped up," "enraged," "loud," "drunk," and "wild." Pagan testified that she

was scared, nervous, and "did not feel safe in that environment" because the crowd was "amped up around [her]." Thus, there was evidence that Ngalu believed his intervention (of striking Anzai after Anzai struck him), was necessary to protect Pagan as well as himself. See HRS § 703-305(1)(b).

"[I]t is not for this court to determine whether the testimony of one is more credible than the other." Kikuta, 125 Hawaiʻi at 97, 253 P.3d at 658. The threshold warranting a Defense of Others instruction is whether there is "any support in the evidence" for the instruction, "no matter how weak, unsatisfactory, or inconclusive" the evidence may appear to be. Id. at 90, 253 P.3d at 651 (emphasis added) (citation omitted). The threshold mandating the instruction was met in this case.

The erroneous refusal of the Defense of Others instruction was not harmless beyond a reasonable doubt. The Circuit Court did instruct the jury on self-defense under HRS § 703-304 (2014). The jury rejected Ngalu's claim of self-defense, and found him guilty of the lesser included offense of Assault Second. "[I]t is possible that a defendant could be justified in using force to protect another person, even if the defendant himself or herself was not justified in using force for self protection." Mark, 123 Hawaiʻi at 224, 231 P.3d at 497 (italics omitted). In this case, while the jury may have reasonably concluded, based on the facts it found, that Ngalu was not entitled to self-defense, the jury could have evaluated the evidence differently with respect to the Defense of Others. A Defense of Others instruction would have required the jury to evaluate the circumstances of Ngalu's use of force against Anzai, considering Ngalu's belief with respect to any necessity of protecting Pagan. See HRS § 703-305. In light of the record, there is a reasonable possibility that the omission of the Defense of Others instruction may have contributed to Ngalu's conviction, and the error is not harmless beyond a reasonable doubt. See Nichols, 111 Hawaiʻi at 334, 141 P.3d at 981.

### B.    The Circuit Court did not err in instructing the jury on Accomplice Liability.

Ngalu contends that the Circuit Court plainly erred in instructing the jury on Accomplice Liability under HRS § 702-222 (2014)[11] because there was insufficient evidence to do so.  The State responds that the evidence was sufficient.

"In the context of the accomplice statute, the Model Penal Code makes clear that 'intent to promote or facilitate' means to have the conscious objective of bringing about the commission of the offense."  State v. Basham, 132 Hawai‘i 97, 109, 319 P.3d 1105, 1117 (2014).  "Section 702-222 requires that to be guilty as an accomplice, a person must act with the intent of promoting or facilitating the commission of the crime."  State v. Soares, 72 Haw. 278, 282, 815 P.2d 428, 430 (1991).  "Mere presence at the scene of an offense or knowledge that an offense is being committed, without more, does not make a person an accomplice to that offense."  State v. Acker, 133 Hawai‘i 253, 286, 327 P.3d 931, 964 (2014) (quoting HAWJIC 6.01).

In this case, there was evidence through the testimonies of Jackson and Anzai, of Ngalu acting as an accomplice to Finau.  Jackson testified he observed Anzai being punched and kicked by two men in quick succession.  One male had bleached hair, fitting Finau's description, and the other male had a maroon tank top, matching Ngalu's attire.  Anzai testified that while he did not see who first hit him, he heard someone say

---

[11]    HRS § 702-222 provides:

A person is an accomplice of another person in the commission of an offense if:
(1) With the intention of promoting or facilitating the commission of the offense, the person:
    (a) Solicits the other person to commit it;
    (b) Aids or agrees or attempts to aid the other person in planning or committing it; or
    (c) Having a legal duty to prevent the commission of the offense, fails to make reasonable effort so to do; or
(2) The person's conduct is expressly declared by law to establish the person's complicity.

"Fou what are you doing" after the first hit.  When Anzai turned, he received a second hit from Ngalu.  When Anzai fell, Ngalu kicked him.  While on the ground, Anzai saw Ngalu standing over him and Finau in the area.  Thus, there was circumstantial evidence of Ngalu aiding Finau, with intent to promote or facilitate Finau's assault of Anzai.  See HRS § 702-222(1)(b).  The Circuit Court did not err in giving the Accomplice Liability instruction.  Assuming arguendo that such instruction was erroneously given, it was  harmless beyond a reasonable doubt because there was substantial evidence of Ngalu's liability as the principal under HRS § 702-222(1)(b).

**C.   The Circuit Court plainly erred by omitting an instruction on Mutual Affray.**

Ngalu contends that the Circuit Court plainly erred by not *sua sponte* instructing the jury on Mutual Affray when the Circuit Court gave the instruction for the lesser included offense of Assault Third.  The State responds that (1) there was insufficient evidence to support a Mutual Affray instruction and (2) even if the Circuit Court should have submitted such instruction, any error was harmless beyond a reasonable doubt under State v. Magbulos, 141 Hawaiʻi 483, 413 P.3d 387 (Ct. App. 2018)(cert. rejected by State v. Magbulos, SCWC-14-0001337 (June 21, 2018)), because the jury convicted Ngalu of the "higher" included offense of Assault Second instead of Assault Third.  Thus, according to the State, an instruction on Mutual Affray would not have changed the outcome of Ngalu's conviction.

"Assault in the third degree is a misdemeanor unless committed in a fight or scuffle entered into by mutual consent, in which case it is a petty misdemeanor."  HRS § 707-712(2).  Mutual Affray "is not a lesser included offense of Assault in the Third Degree," but is a "mitigating defense that reduces the offense of Assault in the Third Degree to a petty misdemeanor."  Kikuta, 125 Hawaiʻi at 95, 253 P.3d at 657 (citing HRS § 707-712(2)).  The Kikuta court held that a trial court "must submit a

20

mutual affray instruction to the jury where there is <u>any</u> evidence in the record that the injury was inflicted during the course of a fight or scuffle entered into by mutual consent, as indicated in HAWJIC 9.21." <u>Id.</u> at 96, 253 P.3d at 657 (emphasis added). "[C]onsent" includes implied consent. <u>Id.</u> Consent may be "inferred from one's conduct" or may be "implied from an individual's words, gestures, or conduct." <u>Id.</u> (citations, internal quotation marks omitted). The <u>Kikuta</u> court determined, from its review of the conflicting testimonies of the defendant and complainant, that "there was some evidence adduced from which the complainant's consent to affray may be implied" and thus, the Mutual Affray instruction should have been given. <u>Id.</u>

The State's argument that the failure to give the Mutual Affray instruction is harmless beyond a reasonable doubt where the jury convicted Ngalu of a higher grade offense instead of Assault Third, is without merit. In <u>Magbulos</u>, the ICA found any error was harmless, where the defendant was charged and convicted of second-degree murder, and the trial court had denied instructions on the lower-level lesser included offenses of Assault Second, Assault Third, and Mutual Affray. <u>Magbulos</u>, 141 Hawaiʻi at 499, P.3d at 403. The <u>Magbulos</u> court applied a harmless error analysis as to the failure to instruct on lesser included offenses "at least three levels below the second-degree murder" for which the defendant was convicted. <u>Id.</u> The supreme court in <u>Kikuta</u> rejected applying a lesser-included-offenses analysis to Mutual Affray, because Mutual Affray is "not a lesser included offense of Assault in the Second Degree, but rather, a mitigated defense to Misdemeanor Assault in the Third Degree." <u>Kikuta</u>, 125 Hawaiʻi at 95, 253 P.3d at 656. Therefore, <u>Magbulos</u> does not apply.

In <u>State v. Henley</u>, 136 Hawaiʻi 471, 480, 363 P.3d 319, 328 (2015), where the defendant was charged with Assault Third and the trial court did not give the Mutual Affray instruction, the supreme court held, after reviewing the evidence and applying

21

Kikuta, that "we cannot say that the omission of the mutual affray instruction was harmless beyond a reasonable doubt, as it is possible, on this record, that given a choice between convicting Henley on misdemeanor Third Degree Assault and the mitigated offense of petty misdemeanor assault, the jury could have convicted Henley on the latter."

In this case, the totality of evidence shows that given a choice between convicting Ngalu of the charged offense of Assault First and the mitigated offense of Assault Third by Mutual Affray, it is possible that the jury could have convicted Ngalu on the latter. See id. Ngalu and Pagan claimed that the two confrontations were precipitated by Anzai staring at them, first at Lava's and again in the parking lot. Eyewitness Fehoko described seeing a "fight" between Anzai and Ngalu. Ngalu testified that he hit Anzai in response to Anzai hitting him first, and claimed he did so to protect himself and Pagan. While the testimony between the witnesses is conflicting regarding who hit who first, and the sequence of events thereafter, Ngalu's testimony constituted evidence from which Anzai's "consent to affray may be implied." Kikuta, 125 Hawai‘i at 96, 253 P.3d at 657. The threshold warranting a Mutual Affray instruction is whether there is "any evidence in the record that the injury was inflicted during the course of a fight or scuffle entered into by mutual consent[.]" Id. at 95, 253 P.3d at 547 (emphasis added). This threshold was met in this case.

On this record, we cannot say that the omission of the Mutual Affray instruction was harmless beyond a reasonable doubt. In this case, there were multiple factual disputes and determinations of criminal liability between the two defendants for the jury to resolve as factfinder. These issues included which defendant did a specific act or acts, which act or acts resulted in bodily injury to Anzai, the degree of the injury sustained (bodily injury, substantial bodily injury or serious bodily injury), and the causation for the injury of the broken

22

jaw presented through the medical expert.

Ngalu claimed that Finau "false'd" Anzai, Anzai hit Ngalu in reaction, Ngalu hit Anzai once on Anzai's head or on top of his head, then Finau hit Anzai a second time, and Anzai fell. Ngalu denied kicking Anzai on the ground.  The doctor opined that a "hit alone to the top of the head without any extenuating circumstances" could not cause the type of fracture Anzai sustained.  If the jury believed Ngalu's version of events, that Ngalu struck Anzai once at the top of his head, only after Anzai hit Ngalu first in an implied mutual affray, and that such a "hit alone to the top of the head" would not cause the substantial bodily injury required for Assault Second per the doctor's testimony, then the jury could have convicted Ngalu of the mitigated offense of Mutual Affray if the instruction had been given.  See Henley, 136 Hawaiʻi at 480, 363 P.3d at 328.  Because there was a reasonable possibility that the omission of the Mutual Affray instruction may have contributed to Ngalu's conviction for Assault Second, we cannot say that the error was harmless beyond a reasonable doubt.  See Nichols, 111 Hawaiʻi at 334, 141 P.3d at 981.

> **D.   Ngalu's remaining points of error.**

Ngalu's contention that the Circuit Court erred in denying Ngalu's MJOA at the end of the State's case, and Ngalu's renewed MJOA at the conclusion of the evidence is without merit. Viewing the evidence in the light most favorable to the State and fully recognizing the province of the factfinder, a reasonable mind might fairly conclude guilt beyond a reasonable doubt as to the charged offense of Assault First.  See Hicks, 113 Hawaiʻi at 69, 148 P.3d at 502.  The Circuit Court did not err in concluding that the evidence was sufficient and denying Ngalu's MJOAs.  See Hawaiʻi Rules of Penal Procedure Rule 29(a).

Because we vacate and remand for a new trial for the reasons set forth above, we do not reach Ngalu's remaining point of error regarding ineffective assistance of his trial counsel.

23

**NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER**

## IV.  CONCLUSION

Based on the foregoing, we vacate the Amended Judgment, and this matter is remanded for a new trial.

DATED: Honolulu, Hawaiʻi, March 9, 2021.

On the briefs:                          /s/ Katherine G. Leonard
                                        Associate Judge
Dwight C.H. Lum
for Defendant-Appellant                 /s/ Karen T. Nakasone
                                        Associate Judge
Gerald K. Enriques
Deputy Prosecuting Attorney
County of Maui
for Plaintiff-Appellee

24

<u>CONCURRING AND DISSENTING OPINION BY GINOZA, CHIEF JUDGE</u>

I concur with the majority that, given the evidence in this case, the Circuit Court erred in not instructing the jury on two separate defenses: "Defense of Others" under Hawaii Revised Statutes (**HRS**) § 703-305 (2014) and "Mutual Affray" under HRS § 707-712(2) (2014).[1]  Defense of Others is a potential defense with respect to Assault in the First Degree (**Assault One**), Assault in the Second Degree (**Assault Two**) and Assault in the Third Degree (**Assault Three**).  <u>See generally</u> <u>State v. Matuu</u>, 144 Hawaiʻi 510, 445 P.3d 91 (2019) (regarding conviction for Assault One); <u>State v. Jhun</u>, 83 Hawaiʻi 472, 482, 927 P.2d 1355, 1365 (1996) (regarding conviction for Assault Two); <u>State v. Pavao</u>, 81 Hawaiʻi 142, 913 P.2d 553 (App. 1996) (regarding conviction for Assault Three).  Here, Defendant Paula Siaosi Ngalu, Jr. (**Ngalu**) was charged with Assault One and <u>convicted of Assault Two</u>, and therefore the failure to instruct the jury on Defense of Others was not harmless error because Defense of Others was a potential defense to the criminal offense on which Ngalu was convicted.  In other words, there is a reasonable possibility that the failure to instruct the jury regarding Defense of Others contributed to Ngalu's conviction for Assault Two.  On this basis, Ngalu's conviction must be vacated.

I respectfully dissent, however, from the majority's conclusion that the failure to instruct on the Mutual Affray defense was plain error, and not harmless error.  <u>See</u> Hawaiʻi Rules of Penal Procedure (**HRPP**) Rule 52.[2]  The Mutual Affray defense applies only with respect to Assault Three, for which Ngalu was not convicted.  The jury was given an instruction on

---

[1]     I also concur that the Circuit Court did not err in giving a jury instruction on accomplice liability.

[2]     HRPP 52 provides:

> **(a) Harmless Error.** Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.

> **(b) Plain Error.** Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.

the lesser included offense of Assault Three, and thus was given the opportunity to consider whether to convict Ngalu on that lesser included offense, but did not.[3]  Given these circumstances, I conclude the Circuit Court's error in not instructing the jury regarding the Mutual Affray defense to Assault Three was harmless error, because there was no reasonable possibility that this error contributed to Ngalu's conviction for Assault Two.

In State v. Kikuta, 125 Hawai'i 78, 253 P.3d 639 (2011), the Hawai'i Supreme Court stated with regard to plain error review of erroneous jury instructions that:

> once instructional error is demonstrated, this court will vacate the judgment of the court, without regard to whether timely objection was made, if there is a reasonable possibility that the error contributed to the defendant's conviction, i.e., that the erroneous jury instruction was not harmless beyond a reasonable doubt.

Id. at 95, 253 P.3d at 656 (citing State v. Nichols, 111 Hawai'i 327, 337, 141 P.3d 974, 984 (2006)) (internal quotation marks and brackets omitted).

With regard to Assault Three, HRS § 707-712 provides:

> **HRS § 707-712 Assault in the third degree.**  (1) A person commits the offense of assault in the third degree if the person:
> (a)   Intentionally, knowingly, or recklessly causes bodily injury to another person; or
> (b)   Negligently causes bodily injury to another person with a dangerous instrument.
> (2) Assault in the third degree is a misdemeanor unless committed in a fight or scuffle entered into by mutual consent, in which case it is a petty misdemeanor.

(Emphasis added).

In Kikuta, the Hawai'i Supreme Court held that the Circuit Court committed plain error for failing to give a Mutual Affray instruction with respect to the offense of Assault Three, where there was evidence to support the Mutual Affray instruction and there was a reasonable possibility that error contributed to the conviction in that case.  In Kikuta, the defendant was

_____

[3]   The jury was instructed on the charged offense of Assault One, as well as the lesser included offenses of Assault Two and Assault Three.

2

convicted of Assault Three.[4]  125 Hawaiʻi at 81, 253 P.3d at 642.
The defendant did not request an instruction on the Mutual Affray
defense, and none was given.  Id. at 86, 253 P.3d at 647.  The
Hawaiʻi Supreme Court explained that Mutual Affray was a
mitigating defense to Assault Three, stating:

> HRS § 701-115(1) (1993) provides in relevant part that "[a]
> defense is a fact or set of facts which *negatives* penal
> liability." (Emphasis added.) HRS § 707-712(1) sets forth
> the offense of Assault in the Third Degree. HRS § 707-712(2)
> provides that Assault in the Third Degree will generally be
> a "misdemeanor unless committed in a fight or scuffle
> entered into by mutual consent," in which case, it is "a
> petty misdemeanor." The commentary on HRS § 707-712
> similarly explains that "Assault in the third degree ... is
> treated as a misdemeanor[,]" but "is *reduced* to a petty
> misdemeanor if the harm is inflicted in a fight or scuffle
> entered into by mutual consent." (Emphasis added.) Thus, HRS
> § 707-712(2) "provide[s] a *defense which mitigates that
> crime from a misdemeanor to a petty misdemeanor* when the
> assault is committed during a fight or scuffle entered into
> by mutual consent." State v. Coyle, 71 Haw. 165, 167, 785
> P.2d 1320, 1320 (1990) (emphasis added). In other words,
> mutual affray is a mitigating defense that reduces the
> offense of Assault in the Third Degree to a petty
> misdemeanor.

Id. at 95-96, 253 P.3d at 656-57 (underline emphasis added).
Under the circumstances in Kikuta, the Hawaiʻi Supreme Court held
that the erroneous failure to instruct the jury on the Mutual
Affray defense required that the judgment be vacated "because
there is a reasonable possibility that the error contributed to
[Kikuta's] conviction for **misdemeanor** assault in the third
degree." Id. at 97, 253 P.3d at 658 (internal quotation marks
and citation omitted) (emphasis added).

In a subsequent case, State v. Henley, 136 Hawaiʻi 471,
363 P.3d 319 (2015), the Hawaiʻi Supreme Court again held that
the Circuit Court plainly erred in failing to instruct the jury
on the Mutual Affray defense.  In that case, Henley was charged
and convicted of Assault Three.  Id. at 473, 476, 363 P.3d at
321, 324.  The Circuit Court instructed the jury on the offense
of Assault Three, but did not give an instruction on the Mutual

---

[4]      In terms of the original charge, the opinion initially indicates
Kikuta was charged with Assault Two, but later indicates he was charged with
Assault Three.  Id. at 81, 96, 253 P.3d at 642, 657.  In any event, Kikuta was
ultimately convicted of Assault Three, to which the Mutual Affray defense is
applicable.

Affray defense.  Id. at 476, 479, 363 P.3d at 324, 327.  Given the evidence in that case, the Hawaiʻi Supreme Court held that there was evidence in the record that the complaining witness's "injury was inflicted during the course of a fight or scuffle entered into by mutual consent" and thus the Circuit Court should have instructed the jury on the Mutual Affray defense.  Id. at 480, 363 P.3d at 328.  The Hawaiʻi Supreme Court further held:

> we cannot say that the omission of the mutual affray instruction was harmless beyond a reasonable doubt, as it is possible, on this record, that <u>given a choice between convicting Henley on **misdemeanor** Third Degree Assault and the mitigated offense of **petty misdemeanor** assault, the jury could have convicted Henley on the latter</u>.

Id. (citing Kikuta, 125 Hawaiʻi at 97, 253 P.3d at 658) (emphasis added).

Here, as noted, Ngalu was charged with Assault One and convicted of Assault Two.  The Circuit Court instructed the jury on Assault One, as well as the lesser included offenses of Assault Two and Assault Three.  The jury thus had the opportunity to find Ngalu guilty on any of these three offenses, and it was not an "all or nothing approach" where the jury was required to convict Ngalu as charged or to acquit him.  See State v. Flores, 131 Hawaiʻi 43, 56-57, 314 P.3d 120, 133-34 (2013) (overruling State v. Haanio, 94 Hawaiʻi 405, 16 P.3d 246 (2001) "to the extent that it holds the trial court's error in failing to give <u>included offense</u> instructions is harmless if the defendant was convicted of the charged offense or of a greater included offense.") (emphasis added).  Here, given the option of convicting Ngalu of three separate offenses, the jury convicted Ngalu of Assault Two.  In light of the holdings in <u>Kikuta</u> and <u>Henley</u>, I agree with the majority that because there is evidence in the record to support a Mutual Affray defense instruction, such an instruction should have been given.  However, given that the jury was instructed on the offense of Assault Three but Ngalu was not convicted of Assault Three -- which is distinguishable from <u>Kikuta</u> and <u>Henley</u> -- I conclude the failure to give the Mutual Affray defense instruction was harmless error.

4

For these reasons, I respectfully concur in part, and dissent in part. I would vacate the Circuit Court's Amended Judgment; Conviction and Sentence based on the failure to instruct the jury on the Defense of Others defense, but not based on the failure to provide a Mutual Affray defense instruction.

/s/ Lisa M. Ginoza