**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-23-0000444**
**06-MAR-2024**
**08:00 AM**
**Dkt. 49 OP**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

---o0o---

STATE OF HAWAIʻI, Plaintiff-Appellee, v.
SAMUEL CARTER, aka Tony Johnson, Michael Carter, Tony Carter, and
"Chicago," Defendant-Appellant

NO. CAAP-23-0000444

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CRIMINAL NO. 1CPC-22-0001081)

MARCH 6, 2024

WADSWORTH, PRESIDING JUDGE, NAKASONE AND GUIDRY, JJ.

OPINION OF THE COURT BY NAKASONE, J.

Defendant-Appellant Samuel Carter (**Carter**), self-represented,[1] appeals from the September 1, 2023 "Order Denying

---

[1]  Carter was represented by court-appointed counsel until September 11, 2023, when counsel was allowed to withdraw.

Defendant's Motion for Supervised Release or, in the Alternative, to Reduce Bail" (**Order Denying Bail Reduction**) filed by the Circuit Court of the First Circuit (**Circuit Court**),[2] in which the Circuit Court denied Carter's request to reduce the $3,300,000.00 (**$3.3 million**) bail amount.[3]

On appeal, Carter contends[4] the Circuit Court erred by setting "excessive bail" in the amount of $3.3 million, in violation of the prohibition against excessive bail in the federal and state constitutions;[5] and erred by denying a reduction of bail

[2] The Honorable Ronald G. Johnson presided.

[3] Carter challenges the Circuit Court's January 31, 2023 and May 9, 2023 bail rulings pertaining to Carter's January 9, 2023 motion to set bail and March 14, 2023 motion to reduce bail. At the time Carter filed his August 22, 2023 Notice of Appeal, the record contained no orders reflecting the disposition of Carter's bail motions. After Carter filed the Notice of Appeal, the Circuit Court entered the Order Denying Bail Reduction that included the bail rulings Carter challenges on appeal. We address Carter's challenges in the context of the September 1, 2023 Order Denying Bail Reduction, which is an appealable order. See State v. Johnson, 96 Hawai'i 462, 470 n.12, 32 P.3d 106, 114 n.12 (App. 2001) (explaining that orders appealable under the collateral order exception in criminal cases include "denial of pretrial motions to reduce bail"). The August 22, 2023 Notice of Appeal is "deemed to have been filed on the date" of the September 1, 2023 Order Denying Bail Reduction. Hawai'i Rules of Appellate Procedure (**HRAP**) Rule 4(b)(4).

[4] Carter's Opening Brief does not comply with HRAP Rule 28 in multiple respects, and does not contain any record references. Despite non-compliance with the HRAP, Carter's legal argument is discernible, and we endeavor to afford "litigants the opportunity to have their cases heard on the merits, where possible." Marvin v. Pflueger, 127 Hawai'i 490, 496, 280 P.3d 88, 94 (2012) (cleaned up); see Erum v. Llego, 147 Hawai'i 368, 380-81, 465 P.3d 815, 827-28 (2020) (applying liberal review to pleadings by self-represented litigants "to facilitate access to justice" and to afford opportunity for appellate review despite non-compliance with court rules). While Carter did not provide transcripts of the January 31, 2023 and May 9, 2023 hearings from which he appeals pursuant to HRAP Rule 10(b)(1)(A), we are able to glean the necessary background from court minutes, filings in the Circuit Court, and the procedural history set forth in the Order Denying Bail Reduction.

[5] Carter relies on the Eighth Amendment of the United States Constitution, which states: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

While Carter cites Article I, "Section 9" of the Hawai'i Constitution, he quotes from Article I, **Section 12**, which is pertinent here; this provision states: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted. The court may

to a "reasonable" amount of $100,000.00, in violation of Hawaii Revised Statutes (**HRS**) § 804-9.[6]

We hold that after making findings to support a denial of bail under subsections (b) and (d) of HRS § 804-3, the Circuit Court abused its discretion by electing to set cash bail of $3.3 million instead, and by finding that such amount was reasonable, in violation of HRS § 804-9.

## I. BACKGROUND

**August 30, 2022 initial bail status in Circuit Court was "no bail"**

On August 26, 2022, Carter was indicted by the Plaintiff-Appellee State of Hawaiʻi (**State**) for five counts: Attempted Murder in the Second Degree in violation of HRS §§ 705-500, 707-701.5, and 706-656 (Count One); Murder in the Second Degree in violation of HRS §§ 707-701.5 and 706-656 (Count Two); Ownership or Possession Prohibited of any Firearm or Ammunition by a Person Convicted of Certain Crimes in violation of HRS §§ 134-7(b) and (h) (Count Three); Carrying or Use of Firearm in the Commission of a Separate Felony in violation of HRS § 134-21 (Count Four); and Carrying or Use of a Firearm in the Commission of a Separate Felony in violation of HRS § 134-21

---

dispense with bail if reasonably satisfied that the defendant or witness will appear when directed, except for a defendant charged with an offense punishable by life imprisonment."

[6] Carter quotes from HRS "§ 709-9," which is the predecessor version of the current statute, HRS § 804-9. HRS § 804-9 (2014 & 2022 Supp.), entitled "Amount," provides:

> The amount of bail rests in the discretion of the justice or judge or the officers named in section 804-5 and shall be set in a reasonable amount based upon all available information, including the offense alleged, the possible punishment upon conviction, and the defendant's financial ability to afford bail. The bail amount should be so determined as not to suffer the wealthy to escape by the payment of a pecuniary penalty, nor to render the privilege useless to the poor.

(Count Five).  On August 30, 2022, an Order Pertaining to Bail (**OPB**) was filed, which ordered Carter to be "held without bail" (**no bail**).[7]

On January 9, 2023, Carter filed a Motion for Supervised Release or, in the Alternative, to Set Bail (**Motion to Set Bail**), arguing that there had been no hearing or findings supporting no bail, as required by HRS § 804-3.[8]  In response to the Motion to

---

[7]     The Order Denying Bail Reduction noted in Finding of Fact (**FOF**) 5 that at the time the August 30, 2022 OPB of no bail was filed, an August 26, 2022 Pretrial Bail Report (**PBR**) had been filed under 1DCW-22-0002294 (initial criminal felony complaint filed in district court) by the Oahu Intake Services Center (**OISC**), which recommended against any supervised release for Carter because Carter "did not have a stable residence"; Carter's "employment could not be verified and a representative of [Carter]'s alleged employer indicated they are not familiar with [Carter]"; Carter "ha[d] a criminal record in Nevada, Florida, Illinois, New Jersey, and Hawaii"; and Carter "scored as a 'high' risk level" based on the pretrial risk assessment OISC conducted.

[8]     HRS § 804-3 (2014), entitled "Bailable offenses," states:

> (a) For purposes of this section, "serious crime" means murder or attempted murder in the first degree, murder or attempted murder in the second degree, or a class A or B felony, except forgery in the first degree and failing to render aid under section 291C-12, and "bail" includes release on one's own recognizance, supervised release, and conditional release.

> (b) Any person charged with a criminal offense shall be bailable by sufficient sureties; provided that bail may be denied where the charge is for a serious crime, and:

> (1) There is a serious risk that the person will flee;

> (2) There is a serious risk that the person will obstruct or attempt to obstruct justice, or therefore, injure, or intimidate, or attempt to thereafter, injure, or intimidate, a prospective witness or juror;

> (3) There is a serious risk that the person poses a danger to any person or the community; or

> (4) There is a serious risk that the person will engage in illegal activity.

> (c) Under subsection (b)(1) a rebuttable presumption arises that there is a serious risk that the person will flee or will not appear as directed by the court where the person is charged with a criminal offense punishable by imprisonment for life without possibility of parole. For purposes of

4

Set Bail, the OISC submitted a letter to the Circuit Court noting that:

> "The Oahu Intake Service Center (OISC) has not filed any previous Pretrial Bail Reports in the current case as the defendant is being held without bail." OISC also cited H.R.S. § 353-10[9] and noted that persons detained without bail are not

> subsection (b)(3) and (4) a rebuttable presumption arises that the person poses a serious danger to any person or community or will engage in illegal activity where the court determines that:
>
> (1) The defendant has been previously convicted of a serious crime involving violence against a person within the ten-year period preceding the date of the charge against the defendant;
>
> (2) The defendant is already on bail on a felony charge involving violence against a person; or
>
> (3) The defendant is on probation or parole for a serious crime involving violence to a person.
>
> (d) If, after a hearing the court finds that no condition or combination of conditions will reasonably assure the appearance of the person when required or the safety of any other person or community, bail may be denied.

HRS § 804-3 was amended to its current form in 1987. There is no Hawai'i case law that analyzes the current version of HRS § 804-3 in the context of orders denying bail.

_____

[9] HRS § 353-10 (2015 & 2022 Supp.), entitled "Intake service centers," provides in subsection (b) that the centers shall:

> (3) Conduct internal pretrial risk assessments on adult offenders within three working days of admission to a community correctional center; provided that this paragraph shall not apply to persons subject to county or state detainers or holds, persons detained without bail, persons detained for probation violation, persons facing revocation of bail or supervised release, and persons who have had a pretrial risk assessment completed prior to admission to a community correctional center. . . .
>
> . . . .
>
> (9) Provide pretrial bail reports to the courts on adult offenders, within three working days of admission of the offender to a community correctional center, that are ordered by the court or consented to by the offender. A complete copy of the executed pretrial risk assessment . . . shall be included in the pretrial bail report. . . .

> eligible for a pretrial risk assessment. H.R.S. § 353-10(b)(3). OISC further stated: "Should bail be set in this matter the OISC would be able to address a Motion for Supervised Release in this case."

FOF 8 (footnote added).

> **January 31, 2023 hearing:  Bail set at $3.3 million to obtain an updated pretrial bail report**

At the January 31, 2023 hearing on the Motion to Set Bail, Carter requested a bail amount of "$100,000" to be set.  The State argued that Carter's no bail status pursuant to HRS § 804-3 should continue, as "there was a rebuttable presumption of detention" and that Carter "posed a danger to the community and a flight risk."[10]  The Circuit Court further explained, in FOFs 12 and 13, that while it believed Carter qualified to be held without bail under HRS § 804-3, it set a bail amount so an updated PBR could be obtained from OISC:

> 12. The Court at the time of the January 1 [sic],[11] 2023 hearing, did believe given the charges and the factual information presented, that Defendant qualified for and was subject to, being held without bail pursuant to H.R.S. § 804-3.

---

(Emphases added.)  It appears in this case that a PBR in accordance with this statute was completed on August 26, 2022 and filed in the earlier district court case, not in the Circuit Court case.

[10]  In the September 1, 2023 Order Denying Bail Reduction, the Circuit Court explained in FOF 11 that it found the $3.3 million "to be reasonable" based on, inter alia, the serious crimes Carter was charged with; the possible penalties he faced if convicted; Carter's criminal record in Hawai'i, Nevada, Florida, Illinois, and New Jersey, including felony offenses; Carter's arrests for contempt of court and parole violations indicating risk of flight and non-compliance with court orders; Carter's conviction and arrest for the violent crime of robbery; possessing a firearm as a felon; and Carter's severe mental health diagnosis and reported use of illicit substances prior to entering custody.

[11]  It appears that the Circuit Court was actually referring to the January **31**, 2023 bail hearing, and the January 1, 2023 reference is erroneous.

> 13. The Court's setting of bail in this matter allowed the production of an updated PBR.[12] An updated PBR would allow for further review of any combination of bail conditions that might address the risks of flight and dangerousness.

(Footnotes added.) After the hearing, the Circuit Court then filed a January 31, 2023 OPB that set an aggregate bail amount of $3.3 million.

On March 14, 2023, Carter filed another Motion for Supervised Release or, in the Alternative, to Reduce Bail (**Motion to Reduce Bail**), requesting that the $3.3 million bail be reduced to "$100,000." On March 16, 2023, an updated PBR recommended against any supervised release, and noted that Carter did not have a "stable residence," had no verifiable employment, had a

---

[12] While the statute cited by OISC, HRS § 353-10(b), appears to apply to the preparation of an initial PBR with pretrial risk assessment within the first "three working days" of a detainee's admission to a community correctional center, the Circuit Court is entitled to periodic reviews and recommendations for a pretrial detainee's bail status based on "new information or a change in circumstances" under HRS § 353-6.2 (2015 & 2022 Supp.). This statute, entitled "Community correctional centers; periodic reviews of pretrial detainees," provides:

> (a) The relevant community correctional centers, on a periodic basis but no less frequently than every three months, shall conduct reviews of pretrial detainees to reassess whether a detainee should remain in custody or whether new information or a change in circumstances warrants reconsideration of a detainee's pretrial release or supervision.

> (b) For each review conducted pursuant to subsection (a), the relevant community correctional center shall transmit its findings and recommendations by correspondence or electronically to the appropriate court, prosecuting attorney, and defense counsel.

> (c) If a motion to modify bail is filed pursuant to a recommendation made pursuant to subsection (b), a hearing shall be scheduled at which the court shall consider the motion.

(Emphases added.) HRS § 353-6.2 does not contain any exclusion on the court's ability to obtain a periodic review report, unlike HRS § 353-10(b)(3)'s exclusion of certain categories of pretrial detainees from having pretrial risk assessments prepared.

"criminal record in Nevada, Florida, Illinois, New Jersey, and Hawaii," and that Carter was "scored as a 'high' risk." Another PBR was filed on April 5, 2023, noting that Carter's proposed supervised release sponsors declined to sponsor Carter. The Circuit Court took judicial notice of the PBRs.

**May 9, 2023 hearing: Bail reduction denied and bail remains $3.3 million**

At the May 9, 2023 hearing on the Motion to Reduce Bail, the court minutes reflect that Carter testified, defense exhibits A through C were received,[13] and the Circuit Court denied the bail reduction. This ruling was reflected in the subsequently filed September 1, 2023 Order Denying Bail Reduction, in which the Circuit Court made findings under HRS § 804-3, that because the statute stated that bail "may be denied" and did not ***require*** that bail be denied, the Circuit Court maintained the $3.3 million bail amount and denied the requested reduction to $100,000.00.[14]

---

[13]    The following exhibits were received into evidence: the January 31, 2023 OPB setting bail at $3.3 million (Exhibit A); a Bank of Hawaii banking statement reflecting Carter's savings of "$875.49" (Exhibit B); and an October 27, 2022 complaint filed against Carter for "$543.35" in unpaid rent (Exhibit C).

[14]    The Order Denying Bail Reduction states in pertinent part:

**FINDINGS OF FACT**

. . . .

33. Given the charges and the factual information presented, the rebuttable presumption of detention without bail is applicable, pursuant to H.R.S.§ 804-3. Defendant may be denied bail based upon the charges and the facts as presented to the Court, there is a serious risk that Defendant will flee and a serious risk that Defendant poses a danger to any person or the community. The Court elects not to deny defendant bail in this instance.

34. Bail in the amount of $3,300,000 was previously set by the Court and the Court finds it to be reasonable given the totality of the circumstances. Id. at 1.

**CONCLUSIONS OF LAW**

. . . .

6. HRS § 803(b)(l) states, in pertinent part, "[a]ny person charged with a criminal offense shall be bailable by sufficient sureties; provided that bail <u>may</u> be denied where the charge is for a serious crime, and there is a serious risk that the person will flee."

7. "Under subsection (b)(l) a rebuttable presumption arises that there is a serious risk that the person will flee or will not appear as directed by the court where the person is charged with a criminal offense punishable by imprisonment for life without possibility of parole." HRS § 804-3(c).

8. The penalty for Attempted Murder in the Second Degree and Murder in the Second Degree is life imprisonment with the possibility of parole. HRS § 706-656(2). The State has given Defendant notice of his eligibility to be sentenced to an extended term of imprisonment, which increases the potential penalty that he is facing to life imprisonment without the possibility of parole. HRS § 706-661(1).

9. <u>The Court finds that Defendant is charged with multiple serious crimes under HRS § 804-3(b) and poses a serious flight risk under HRS § 804-3(b)(l).</u>

10. Further, bail <u>may</u> also be "denied where the charge is for a serious crime, and ... [t]here is a serious risk that the person poses a danger to any person or the community." HRS § 804-3(b)(3).

11. <u>The Court finds that Defendant poses a serious risk of danger to any person or the community under HRS § 804(b)(3) based on the alleged facts of the current offenses.</u>

12. <u>The Court has not been presented with a condition or combination of conditions that will reasonably assure the appearance of Defendant when required or the safety of any other person or community."</u> HRS § 804-3(d).

13. Under the circumstances bail <u>may</u> be denied pursuant to H.R.S. § 804-3, however, there is not a requirement to do so.

14. Defendant poses a serious risk of flight and a serious danger to any person or the community. The Court has applied its wide discretion in considering the foregoing factors, such as Defendant's pecuniary situation and the maximum potential penalty for the charges in the indictment. Sakamoto v. Won Bae Chang [sic], 56 Haw. 447, 539 P.2d 1197 (1975). The Court finds that the current bail in the amount of $3,300,000 is reasonable at this time.

(Emphases added and emphases to "may" in original.)

## II. STANDARD OF REVIEW

**Release on Bail:** "The decision whether to grant a motion for release on bail . . . requires a judgment call" by the trial court; and decisions "requir[ing] a 'judgment call' on the part of the trial court, are reviewed for an abuse of discretion." State v. Cullen, 86 Hawaiʻi 1, 9, 946 P.2d 955, 963 (1997) (cleaned up). "The trial court abuses its discretion when it clearly

_____

It appears that the Circuit Court cited to Sakamoto v. Won Bae Chang, 56 Haw. 447, 539 P.2d 1197 (1975), for the proposition that the court has wide discretion in determining the amount of bail. Carter also relies on Sakamoto, which the State argues is distinguishable, as it is unclear in Sakamoto "what were the relevant facts[,]" and because "the statutes relating to bail have been amended and bec[a]me more detailed since[.]"

In Sakamoto, the petitioner argued that bail in the amount of "$300,000" was "in effect a denial of his right to be admitted to bail." Id. at 449, 539 P.2d at 1199. Sakamoto construed the predecessor version of HRS § 804-3, which is now obsolete. The prior version of HRS § 804-3 stated: "All persons charged with criminal offenses shall be bailable by sufficient sureties, unless for offenses punishable by imprisonment for life not subject to parole, when the proof is evident or the presumption great." Id. Under this obsolete statute, the Sakamoto Court found that the State "did not sustain [its] burden that there [was] a fair likelihood that the petitioner [was] in danger of a jury verdict against him for murder in the first degree[,]" and thus the petitioner was entitled to bail. Id. at 449-50, 539 P.2d at 1199. The supreme court then looked to the predecessor version of the bail amount statute, HRS § 804-9, which stated:

> The amount of bail rests in the discretion of the justice or judge or the officers named in section 709-5; but should be so determined as not to suffer the wealthy to to [sic] escape by the payment of a pecuniary penalty, nor to render the privilege useless to the poor. In all cases, the officer letting to bail should consider the punishment to be inflicted on conviction, and the pecuniary circumstances of the party accused.

Id. at 450, 539 P.2d at 1199. Under this predecessor version of HRS § 804-9 and Article I, Section 12 of the Hawaiʻi Constitution, the Sakamoto Court concluded that the $300,000 bail amount was excessive, where the lower court found that petitioner "'[was] not of means,'" that "'pecuniary circumstances of the [petitioner] would not be the basis on which a high bail can be set[,]'" and "[n]o evidence has been presented that [petitioner] would not be present at any of these proceedings should be [sic] not be held in custody[.]" Id. at 450-51, 539 P.2d at 1199-200. While the Circuit Court and the parties all referenced to Sakamoto, a 1975 case, we conclude that Sakamoto's construction of obsolete versions of HRS §§ 804-3 and 804-9 renders it inapposite and unhelpful to our contemporary application of the current versions of these statutes in this case.

10

exceeds the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party litigant." Id. (citations omitted).

**Amount of Bail:** "It is settled that the determination of the amount of bail rests peculiarly within the discretion of the trial court. An appellate court should not disturb or interfere with the exercise of such discretion, unless it is clearly abused." State v. Henley, 136 Hawai'i 471, 478, 363 P.3d 319, 326 (2015) (citation omitted).

**Statutory Construction:** The interpretation of a statute is reviewed de novo. State v. Choy Foo, 142 Hawai'i 65, 72, 414 P.3d 117, 124 (2018). The court's construction of statutes is guided by the following rules:

> First, the fundamental starting point for statutory interpretation is the language of the statute itself. Second, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning. Third, implicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. Fourth, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.

Id. (citation omitted).

### III. DISCUSSION

Carter argues, inter alia, that the Circuit Court set "excessive" bail in the amount of $3.3 million in violation of Article I, Section 12 of the Hawai'i Constitution and HRS § 804-9, as he is a "poor person." The State argues that the Circuit Court did not abuse its discretion, where it could have "detained Carter without bail as provided in HRS § 804-3(b)[,]" but chose to not do so and instead found that $3.3 million "was reasonable given the totality of the circumstances."

### A. The setting of cash bail under HRS § 804-9 entails a financial circumstances analysis, which is distinct and different from the risk analyses for denial of bail under HRS § 804-3(b) and (d).

Under the HRS, a criminal pretrial defendant is ordinarily entitled to a presumption of bail. "If the charge is for an offense for which bail is allowable under section 804-3, the defendant may be admitted to bail before conviction as a matter of right and under the least restrictive conditions required to ensure the defendant's appearance and to protect the public. . . ." HRS § 804-4(a) (2014 & 2022 Supp.) (emphasis added). "Any person charged with a criminal offense shall be bailable by sufficient sureties; provided that bail may be denied where the charge is for a serious crime . . . ." HRS § 804-3(b).

HRS § 804-1 (2014) defines "bail" as:

> Bail, or the giving of bail, is the signing of the recognizance by the defendant and the defendant's surety or sureties, conditioned for the appearance of the defendant at the session of a court of competent jurisdiction to be named in the condition, and to abide by the judgment of the court.

"Bail" is generally defined as "[a] security such as cash, a bond, or property; esp., security required by a court for the release of a criminal defendant who must appear in court at a future time." Black's Law Dictionary 167 (10th ed. 2014). HRS § 804-3(a) further explains that, under that statute, "'bail' includes release on one's own recognizance, supervised release, and conditional release." There are also mandatory "[g]eneral conditions of release on bail" that apply to all persons released on any of the different types of bail, under HRS § 804-7.4.[15]

---

[15] HRS § 804-7.4 (2014), entitled "General conditions of release on bail," provides:

> Any person released on bail, recognizance, supervised release or conditional release shall be released subject to the following conditions:

**1. Setting of cash bail is governed by HRS § 804-9.**

As to monetary or "cash" bail, HRS § 804-9 specifically requires that the amount be "reasonable," which is determined based on "all available information, including the offense alleged, the possible punishment upon conviction, and the defendant's financial ability to afford bail." HRS § 804-9 circumscribes a court's discretion with the admonition that the cash bail amount "should be so determined as not to suffer the wealthy to escape by the payment of a pecuniary penalty, nor to render the privilege useless to the poor." Thus, a key component of setting cash bail under HRS § 804-9 involves analyzing the financial circumstances of the defendant, and setting an amount that does not discriminate against indigent defendants and advantage defendants with financial means.

**2. Denial of bail based on risk is governed by HRS § 804-3.**

*Bail denial for serious crime and serious risk under HRS § 804-3(b).* Under HRS § 804-3(b), a person "may be denied" bail for a "serious crime" and if the trial court finds any of the "serious risk[s]" in (b)(1) through (b)(4) are present:

> (1) There is a serious risk that the person will flee;
>
> (2) There is a serious risk that the person will obstruct or attempt to obstruct justice, or therefore, injure, or intimidate, or attempt to thereafter, injure, or intimidate, a prospective witness or juror;
>
> (3) There is a serious risk that the person poses a danger to any person or the community; or

---

(1) The person shall not commit a federal, state or local offense during the period of release;

(2) The person shall appear for all court hearings unless notified by the person's attorney that the person's appearance is not required; and

(3) The person shall remain in the State of Hawaii unless approval is obtained from a court of competent jurisdiction to leave the jurisdiction of the court.

> (4) There is a serious risk that the person will engage in illegal activity.

A "serious crime" under HRS § 804-3 means "murder or attempted murder in the first degree, murder or attempted murder in the second degree, or a class A or B felony, except forgery in the first degree and failing to render aid under section 291C-12[.]" HRS § 804-3(a). HRS § 804-3(c) sets forth the criteria for the various rebuttable presumptions that may apply to any of the applicable "serious risk" findings for a "serious crime" denial of bail under subsection (b), such as "serious risk" of flight under (b)(1), "serious risk" of danger to a person or the community under (b)(3), and "serious risk" of illegal activity under (b)(4). Thus, the bail denial determination under HRS § 804-3(b) involves a "serious crime" determination and an analysis of the "serious risk" posed by the defendant.

> ***Bail denial for no risk-mitigating bail conditions under HRS § 804-3(d).*** Under HRS § 804-3(d), "[i]f, after a hearing the court finds that no condition or combination of conditions will reasonably assure the appearance of the person when required or the safety of any other person or community, bail may be denied." Thus, the bail denial determination under HRS § 804-3(d) involves an analysis of whether any risk-mitigating bail conditions[16] may be

---

[16] These conditions are set forth in HRS § 804-7.1 (2014 & 2022 Supp.), entitled "Conditions of release on bail, recognizance, or supervised release," which provides in pertinent part:

> Upon the defendant's release on bail, recognizance, or supervised release, however, the court may enter an order:
>
> (1) Prohibiting the defendant from approaching or communicating with particular persons or classes of persons, except that no such order should be deemed to prohibit any lawful and ethical activity of defendant's counsel;
>
> (2) Prohibiting the defendant from going to certain described geographical areas or premises;

imposed to provide reasonable assurance against a risk of non-appearance, or a risk to public safety. If the court determines no risk-mitigating bail conditions or combination of conditions exist under HRS § 804-3(d), then a denial of bail is appropriate.[17]

---

    (3) Prohibiting the defendant from possessing any dangerous weapon, engaging in certain described activities, or indulging in intoxicating liquors or certain drugs;

    (4) Requiring the defendant to report regularly to and remain under the supervision of an officer of the court;

    (5) Requiring the defendant to maintain employment, or, if unemployed, to actively seek employment, or attend an educational or vocational institution;

    (6) Requiring the defendant to comply with a specified curfew;

    (7) Requiring the defendant to seek and maintain mental health treatment or testing, including treatment for drug or alcohol dependency, or to remain in a specified institution for that purpose;

    (8) Requiring the defendant to remain in the jurisdiction of the judicial circuit in which the charges are pending unless approval is obtained from a court of competent jurisdiction to leave the jurisdiction of the court;

    (9) Requiring the defendant to submit to the use of electronic monitoring and surveillance;

    (10) Requiring the confinement of the defendant in the defendant's residence[.]

[17] While not referenced in the Order Denying Bail Reduction that we review here, there is another bail denial provision set forth in HRS § 804-7.1, in addition to the bail denial provisions in subsection (b) and (d) of HRS § 804-3. This bail denial provision under HRS § 804-7.1 states:

    Upon a showing that there exists a danger that the defendant will commit a serious crime or will seek to intimidate witnesses, or will otherwise unlawfully interfere with the orderly administration of justice, the judicial officer named in section 804-5 may deny the defendant's release on bail, recognizance, or supervised release.

While bail denial under HRS § 804-7.1 contains a similar reference to "serious crime" as in HRS § 804-3, it does not reference HRS § 804-3 or define "serious crime." HRS § 804-3 defines "serious crime," but for "purposes of [that] section" only.

**B. The Circuit Court made the required findings for a denial of bail for a "serious crime" and "serious risk" under HRS § 804-3(b), and no risk-mitigating bail conditions under HRS § 804-3(d).**

Here, with regard to the "serious crime" and "serious risk" analysis under subsection (b), the Circuit Court found Carter was charged with a "serious crime" in each of the five counts in the Indictment under HRS § 804-3(a). The Circuit Court found under (b)(1) that Carter was "charged with multiple serious crimes under HRS § 804-3(b) and poses a serious flight risk under HRS § 804-3(b)(1)." Conclusion of Law (**COL**) 9. The Circuit Court applied the rebuttable presumption of serious risk of flight under subsection (c), where "[t]he penalty for Attempted Murder in the Second Degree is life imprisonment with the possibility of parole[,]" and the "State has given [Carter] notice of his eligibility to be sentenced to an extended term of imprisonment, which increases the potential penalty . . . to life imprisonment without the possibility of parole." COLs 7-8. The Circuit Court also found under subsection (b)(3), that Carter "pose[d] a serious risk of danger to any person or the community" "based on the alleged facts of the current offenses." COLs 10-11. Even though the Circuit Court made the required findings for a denial of bail under the "serious crime" prong in HRS § 804-3(b), the Circuit Court elected not to deny bail in this case.

Here, with regard to the analysis of any risk-mitigating bail conditions under HRS § 804-3(d), the Circuit Court concluded that: "The Court has not been presented with a condition or combination of conditions that will reasonably assure the appearance of [Carter] when required or the safety of any other person or community." COL 12. Despite its conclusion that no bail conditions or combination of bail conditions could reasonably assure Carter's appearance or public safety, the Circuit Court elected not to deny bail in this case. We note, however, that it

16

appears inconsistent for the Circuit Court to find, on the one hand, that no bail conditions could mitigate the non-appearance and public safety risks posed by Carter; and on the other hand, to then set cash bail in the face of such risks.

Despite making findings sufficient to deny bail under both HRS § 804-3(b) and (d), the Circuit Court explained in FOF 33 and COL 13,[18] that the statute's use of the term "may" in stating "bail may be denied" in subsections (b) and (d), meant that the Circuit Court had discretion to deny bail or to elect not to do so. This is a correct interpretation of the plain meaning of "bail may be denied," and the Circuit Court had discretion to elect not to deny bail outright. See Choy Foo, 142 Hawai'i at 72, 414 P.3d at 124. However, once the Circuit Court decided to set cash bail as an alternative, it was required to exercise its discretion in accordance with the law governing setting the amount of cash bail, i.e. HRS § 804-9 and its requirement that the amount be "reasonable." The Circuit Court did not properly exercise its discretion in determining the amount of cash bail in this case.

---

[18]     FOF 33 and COL 13 states:

> 33. Given the charges and the factual information presented, the rebuttable presumption of detention without bail is applicable, pursuant to H.R.S.§ 804-3. Defendant may be denied bail based upon the charges and the facts as presented to the Court, there is a serious risk that Defendant will flee and a serious risk that Defendant poses a danger to any person or the community. The Court elects not to deny defendant bail in this instance.
>
> . . . .
>
> 13. Under the circumstances bail may be denied pursuant to H.R.S. § 804-3, however, there is not a requirement to do so.

(Emphases in original.)

**C. The Circuit Court abused its discretion by setting cash bail in the amount of $3.3 million in violation of HRS § 804-9, without analyzing the financial circumstances of the defendant.**

"Excessive bail shall not be required." U.S. Const. amend. VIII; Haw. Const. art. I, § 12. HRS § 804-9 guides and circumscribes the scope of a trial court's discretion when setting a cash bail amount. The Circuit Court was required to set such cash bail in a "reasonable amount" that would not "render the privilege useless to the poor." HRS § 804-9. The record reflects that on September 19, 2022, prior to the bail hearings at issue, the Circuit Court had found Carter was indigent and appointed court-appointed counsel for Carter due to a conflict of interest with the State Office of the Public Defender. The Circuit Court noted in FOF 20 that Carter admitted into evidence a banking statement, and that Carter had an income of "$861 per month from Social Security benefits." The bail hearing evidence also contained a complaint filed against Carter, which sought to recover unpaid rent from Carter in the amount of "543.35." While FOF 20 reflects that the Circuit Court considered Carter's financial circumstances as HRS § 804-9 requires, the Circuit Court made no findings analyzing Carter's "financial ability to afford bail" under HRS § 804-9, and explaining how the $3.3 million amount was "reasonable" "based upon all available information," which included Carter's bank account and fixed social security income. HRS § 804-9. The evidence did not indicate Carter had the means to post cash bail in the amount of $3.3 million.

Here, it appears that the Circuit Court utilized its risk-based findings for bail denial under HRS § 804-3 to conclude that the $3.3 million bail amount was "reasonable" under HRS § 804-9, which was erroneous. The risk-based analysis for bail denial under HRS § 804-3 is distinct and different from the financial circumstances analysis required under HRS § 804-9.

18

"A statutory interpretation that is rational, sensible, and practicable is preferred to one which is unreasonable, impracticable, inconsistent, contradictory, and illogical." Matter of Lindner, 152 Hawaiʻi 130, 142, 522 P.3d 1117, 1129 (App. 2022) (cleaned up).  If a defendant charged with serious crimes poses such a serious risk under the risk analysis in HRS § 804-3(b), then it is logical to allow a deviation from the presumption of bail, and to deny bail in that instance.  If a defendant's non-appearance or public safety risks cannot be mitigated by any combination of bail conditions under the risk analysis under HRS § 804-3(d), then it is logical for the statute to allow a deviation from the presumption of bail and to deny bail in that instance.  See id.  While HRS § 804-9 includes consideration of the offense type and possible punishment, it does not entail a risk analysis similar to HRS § 804-3, and focuses on an assessment of financial circumstances, which directs trial courts to avoid discriminatory setting in bail amounts that favor wealthy defendants and disadvantage poor ones.

        We conclude that the Circuit Court abused its discretion when it elected to set cash bail of $3.3 million and concluded that such amount was reasonable, in violation of HRS § 804-9.  See Henley, 136 Hawaiʻi at 478, 363 P.3d at 326.

## IV. CONCLUSION

        For the foregoing reasons, we vacate in part the September 1, 2023 "Order Denying Defendant's Motion for Supervised Release or, in the Alternative, to Reduce Bail" filed by the Circuit Court of the First Circuit as to the bail amount, and affirm the remainder of the order, which contains findings that support a denial of bail under HRS § 804-3 (b) or (d).  We remand for the Circuit Court to issue an order pertaining to bail and to

conduct any further proceedings as may be necessary, in accordance with this Opinion.[19]

On the briefs:

Samuel Carter,
Self-represented Defendant-
Appellant.

Brian R. Vincent,
Deputy Prosecuting Attorney
for Plaintiff-Appellee.

/s/ Clyde J. Wadsworth
Presiding Judge

/s/ Karen T. Nakasone
Associate Judge

/s/ Kimberly T. Guidry
Associate Judge

---

[19]     We also reverse the January 31, 2023 OPB setting $3.3 million aggregate bail, and the previous August 30, 2022 OPB of "no bail" remains in effect until a new OPB is issued by the Circuit Court on remand.